## DURHAM v CHRYSLER CORPORATION

Docket No. 62925. Submitted February 3, 1983, at Detroit.—Decided August 16, 1983. Leave to appeal denied, 418 Mich 936.

Gladys Durham was employed by Chrysler Corporation in a job which required her to repeatedly raise her hands above her head and press two buttons. After several months she experienced pain and spells of dizziness. The pain eventually caused her to be unable to work. Her condition was diagnosed as thoracic outlet syndrome. She was thereafter off work intermittently and was ultimately assigned to work which did not require her to lift her hands above waist level. Chrysler voluntarily paid workers' compensation benefits for the periods during which Durham was off work. Shortly after being assigned the favored work, Durham was involved in a nonwork-related automobile accident, after which she did not return to work. She filed a petition for continuing workers' compensation benefits. The hearing referee found that Durham had suffered a disabling work-related injury at the time she had initially missed work due to the pain and that she was entitled to continuing benefits. The Workers' Compensation Appeal Board reversed, finding on the basis of the testimony of experts that Durham's condition was one which was congenital and was aggravated by the work which required her to raise her hands but that during her last month of employment there were no work-related disabling symptoms. Durham appeals. *Held:*

1. The appeal board's findings were supported by competent evidence and will not be disturbed by the Court of Appeals. Durham did not establish a continuing disability by a preponderance of the evidence.

2. The fact that Durham had earlier suffered disabling, work-related symptoms of her underlying condition, and that Chrysler had paid benefits relating to those symptoms, did not

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation § 550.
[2] 82 Am Jur 2d, Workmen's Compensation § 630.
[3] 82 Am Jur 2d, Workmen's Compensation §§ 515, 516.
[4] 82 Am Jur 2d, Workmen's Compensation § 516.

establish her right to continuing benefits. There is no statutory presumption of disability on the facts of this case.

Affirmed.

1. WORKERS' COMPENSATION — APPEAL — FINDINGS OF FACT.

Findings of fact made by the Workers' Compensation Appeal Board are conclusive in the absence of fraud; the Court of Appeals, on review, must determine if there is any fraud associated with the findings of the board and decide if there is any competent evidence in the record to support the findings (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

2. WORKERS' COMPENSATION — APPEAL — QUESTION OF LAW.

Questions of law in an appeal from a decision of the Workers' Compensation Appeal Board are fully reviewable by the Court of Appeals.

3. WORKERS' COMPENSATION — BURDEN OF PROOF.

The claimant in a workers' compensation case must establish a work-related disability by a preponderance of the evidence.

4. WORKERS' COMPENSATION — CONTINUING DISABILITY — PAST DISABILITY.

The fact that a workers' compensation claimant has in the past suffered a disabling, work-related symptomatic manifestation of an underlying anatomical condition, for which the employer voluntarily paid benefits, does not establish the claimant's right to continuing benefits; the claimant's allegation of a continuing work-related disability must be established by a preponderance of the evidence.

*Sam W. Thomas, P.C.* (by *E. R. Whinham,* of counsel), for plaintiff.

*Lacey & Jones* (by *Phillip G. Rosenberg*), for defendant.

Before: D. F. WALSH, P.J., and BEASLEY and T. R. THOMAS,* JJ.

D. F. WALSH, P.J. Plaintiff, Gladys Durham, appeals the Workers' Compensation Appeal Board's

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

reversal of a hearing referee's open award of workers' compensation benefits and medical expenses.

Plaintiff was first employed by defendant Chrysler Corporation in 1970. In 1971 or 1972, she was assigned to the valve lock operation on a production line assembling engine heads. This job required her to raise both hands and press two buttons above her head more than 400 times each hour. After several months on that assignment, she began to experience pain in her shoulders, arms, hands, neck and chest; she also began to experience spells of dizziness. On May 7, 1973, the pain became so severe that she was unable to continue working.

Dr. Charles J. Lapp, plaintiff's family doctor, tentatively diagnosed her condition in May, 1973, as thoracic outlet syndrome. This diagnosis was confirmed by a neurologist, Dr. Akemi Takekoshi.

In deposition testimony, Dr. Takekoshi described thoracic outlet syndrome:

"Basically it refers to problems at the cervical outlet, the base of the neck, and it is in a very small cramped area where the nerves and blood vessels to the arms pass in close proximity to the first rib, and they are surrounded by muscles at the base of the neck, and depending on the person's particular anatomy, or whether they happen to have an extra rib, they can get pressure of the nerves and blood vessels being compressed by the muscles against the first rib causing a variety of symptoms, commonly weakness or numbness in the arms, pain in the arms, compression of the ulnar nerves, most commonly in the arms, frequently neck pain and headaches."

According to Dr. Lapp:

"The immediate cause of trouble in the patient was enlargement of the neck muscles which impinged upon

the nerves as they wound around these neck muscles and impinged upon the arteries to the arms, and a branch of these arteries, the basilar vertebral artery, goes up alongside the spine to the base of the brain, and if this artery gets pinched, the circulation is impaired and the patient becomes dizzy and may have neck aches, headaches and poor coordination and double vision because the base of the brain has to do with these activities."

Plaintiff was off work intermittently between May 7, 1973, and July 8, 1974. Defendant voluntarily paid workers' compensation benefits to her from October 21, 1973, to November 12, 1973, and from June 4, 1974, to July 8, 1974. When she returned to work, plaintiff was given a job which did not require that she lift her hands above waist level. On August 18, 1974, after working for about five weeks, she was involved in a nonwork-related automobile accident. She did not return to work after the accident. She received no-fault benefits and health and accident disability benefits for limited periods after the accident.

On July 14, 1977, plaintiff filed a petition for workers' compensation benefits, listing the nature of her disability as "thoracic outlet syndrome, back, neck, arms, hands and shoulders". She described her injury and disablement as follows:

"* * * worked on job Nov. 70 to 5/7/73 that required her to lift her hands over her head 430 times per hour. Developed thoracic outlet syndrome. Returned to work still symptomatic, and worked on favored employment from 7/12/74 to 8/16/74. The auto she was driving was struck by another car 8/18/74, aggravating her thoracic outlet syndrome so she could not perform the favored employment."

Defendant stipulated that plaintiff had suffered

a personal injury on May 7, 1973, while in defendant's employ, that that injury arose out of and in the course of her employment, and that she had been disabled due to that personal injury for the periods during which workers' compensation benefits had been voluntarily paid. For the period following payment of benefits, defendant denied that plaintiff suffered a work-related disability.

Plaintiff testified that she had been able to do the job assigned to her when she returned to work but that she had experienced some physical difficulty in that assignment. According to Dr. Lapp, plaintiff had been able to do that job until the auto accident. She received a relatively minor muscle sprain in the accident but, according to Dr. Lapp, was thereafter unable to return to work. It was also established that plaintiff underwent an operation for removal of a rib in 1975.

Dr. Takekoshi testified that people who are prone to develop thoracic outlet syndrome often experience an aggravation of symptoms when they perform work requiring them to use their hands at or above shoulder level. In his April, 1974, report to Dr. Lapp, Dr. Takekoshi stated that plaintiff had been able to perform her new work duties and that her pain and numbness had only occasionally recurred.

In 1978, two surgeons examined plaintiff at defendant's request. Dr. Francis B. MacMillan testified that thoracic outlet syndrome is a congenital condition which is not occupationally related. While activity could have a bearing on the condition, according to Dr. MacMillan, the effect would be only temporary and would cease once the demands of the activity had subsided.

The second surgeon, Dr. Robert D. Larsen, testified that thoracic outlet syndrome is not an occu-

pationally induced condition. He stated that, assuming the existence of thoracic outlet syndrome, its symptoms could be precipitated by the conditions of one's occupation but that the syndrome itself would not be affected by occupational conditions.

The hearing referee found that plaintiff had received a disabling, work-related personal injury on May 7, 1973, and that she was entitled to weekly workers' compensation benefits until further order of the bureau. Defendant was also ordered to pay for all reasonable and necessary medical expenses incurred by plaintiff during the course of her disability.

Defendant appealed, arguing that the hearing referee erred in finding that plaintiff was disabled and, assuming disability, in finding that her disability was work-related.

The appeal board reversed the award of benefits. The board explained its rejection of plaintiff's claim as follows:

"We are not convinced of this because of the pivotal fact that plaintiff has failed to present preponderating evidence that establishes a work contribution to the pathology that produces her symptoms and we find this as fact.

"Our view of the evidence causes us to believe that plaintiff has an internal condition that predisposes her to painful symptoms when she performs work that requires her to use her arms at or above shoulder level and we so find as fact. This type of situation does not result in a work related disability except for the period of time that the work induced symptoms prevent employment.

"We are convinced, and so find as fact, that any *disabling symptoms* related to plaintiff's duties of employment were not present during her last month of employment." (Emphasis in original.)

The appeal board's findings of fact are conclusive in the absence of fraud. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861). It is the responsibility of this Court to determine if there is any fraud associated with those findings, and to decide if there is any competent evidence in the record to support them. *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978). Questions of law are fully reviewable. *Id.*

The dispositive factual issue in this case is whether plaintiff suffered a work-related disability beyond the period during which she received workers' compensation benefits. It was plaintiff's burden to establish such disability by a preponderance of the evidence. *Aquilina, supra,* p 211.

The facts in this case are strikingly similar to those in *Castillo v General Motors Corp,* 105 Mich App 776; 307 NW2d 417 (1981), *lv den* 412 Mich 895 (1982). The *Castillo* plaintiff began to experience pain in her back and shoulder shortly after commencing work which entailed bending and lifting. The defendant employer voluntarily paid workers' compensation benefits to her when she was off work. Shortly after she returned to favored work, the plaintiff was injured in a nonwork-related accident. By the time she recovered from the accident, there were no jobs available in her favored-work classification. She was placed on sick leave and her employment was terminated after her sick leave expired. She filed a claim for workers' compensation benefits. It was undisputed that she had suffered back and shoulder pain while employed by the defendant. This Court described the controversy concerning the dispositive issue:

"The only dispute concerned the deposition testimony of the two medical witnesses in the case. The deposition of Dr. Clark was introduced into evidence by plaintiff.

Dr. Clark testified that plaintiff had chronic left shoulder and dorsal back strain and that her employment with defendant precipitated or aggravated her back problem. The deposition of Dr. Badgley was introduced into evidence by defendant. Dr'. Badgley testified that plaintiff suffered from thoracic outlet syndrome, a congenital anomaly which had nothing to do with plaintiff's work. Simplified, Dr. Badgley found that plaintiff suffered from an anatomical condition which, when plaintiff does a particular movement or a series of movements, becomes symptomatic and that plaintiff suffers pain. Dr. Badgley clearly testified that:

" 'Certain types of work will cause her to have symptoms, but it does not aggravate the thoracic outlet syndrome and neither did it cause it.' " 105 Mich App 779.

The hearing referee and the appeal board, relying on Dr. Badgley's testimony, found as a fact that the plaintiff had not suffered a work-related disability and her claim for benefits was denied. This Court affirmed, recognizing its inability to reverse the appeal board's evidentially supported finding of fact.

Similarly, in the instant case, the appeal board's finding that there has been no work contribution to plaintiff's condition is supported by medical testimony and will not be disturbed by this Court.

Plaintiff argues that the appeal board's decision is at odds with defendant's stipulation that plaintiff had been disabled due to a work-related injury during the periods when workers' compensation benefits were voluntarily paid. See *Dana Corp v Employment Security Comm,* 371 Mich 107; 123 NW2d 277 (1963). She further argues that there is a "presumption of continuity" and that, consequently, it was defendant's burden to prove that her disability had ceased. In support of this latter claim, she cites *Aalsburg v Cashion,* 384 Mich 236;

180 NW2d 792 (1970), *Fowler v Hamilton Moving & Storage Co,* 324 Mich 614; 37 NW2d 649 (1949), and *Ferns v Russ Graham Shell Service,* 413 Mich 550; 321 NW2d 380 (1982).

In our judgment, the appeal board's decision is not contrary to defendant's stipulation. In the stipulation defendant merely acknowledged its prior voluntary payment of workers' compensation benefits to plaintiff. As in *Castillo,* the fact that plaintiff had in the past suffered disabling, work-related symptomatic manifestation of her underlying anatomical condition did not establish her right to continuing benefits. The "presumption of continuity" to which plaintiff refers is not applicable to the instant situation. Under the circumstances of this case, the burden of establishing a continuing work-related disability by a preponderance of the evidence lies with plaintiff. *Aquilina v General Motors Corp, supra,* p 211. There is no statutory conclusive presumption of disability in this case. *Ferns v Russ Graham Shell Service, supra,* is patently inapposite.

The decision of the appeal board is affirmed.