WEINMANN v GENERAL MOTORS CORPORATION

Docket No. 85147. Submitted April 14, 1986, at Lansing. Decided June 17, 1986. Leave to appeal denied, 426 Mich 860.

The Workers' Compensation Appeal Board, with one member concurring in the result only, affirmed a decision by a hearing referee which denied plaintiff, Robert W. Weinmann, workers' compensation benefits. Plaintiff appeals therefrom by leave granted. The central issue involved is whether the heavy physical exertion required by plaintiff's job with defendant, General Motors Corporation, Fisher Body Division, sufficiently contributed to plaintiff's disease of arteriosclerosis so as to be compensable under the Workers' Disability Compensation Act. *Held:*

1. The board's findings of fact are amply supported by the evidence. No fraud was alleged or disclosed in the record. The board properly considered both the medical testimony and testimony by the plaintiff.

2. Pain is an aggravation of a symptom of arteriosclerosis rather than an aggravation of the disease itself. There was no evidence that plaintiff's disease was aggravated or caused by his work.

3. Both intermittent claudication and trans-ischemic attacks were caused by plaintiff's arteriosclerosis, however, plaintiff elicited no testimony indicating that either intermittent claudication or trans-ischemic attacks are separate "injuries" or cause further damage. The Court of Appeals found that, absent proof that intermittent claudication or trans-ischemic attacks are separate "injuries," there was no error in regard to the application of the law to the facts of this case.

4. It was plaintiff's burden to prove that he suffered damage due to his claudication or attacks. No such proof was offered.

5. The standard applied by the board was that the employment must cause, aggravate, or contribute to plaintiff's disease.

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 289-298, 613-642.
See the annotations in the ALR3d/4th Quick Index under Diseases; Worker's Compensation.

The board then found that the pain plaintiff experienced was just a symptom of the disease. The board stated the standard and reasoning used sufficiently to permit appellate review.

Affirmed.

1. WORKERS' COMPENSATION — FINDINGS OF FACT — APPEAL.

Findings of fact by the Workers' Compensation Appeal Board will be affirmed on appeal where there is competent evidence in the record to support them and there is no fraud involved.

2. WORKERS' COMPENSATION — EVIDENCE.

The Workers' Compensation Appeal Board is obligated to consider all of the testimony presented to it; although the medical testimony may be found to be ultimately decisive, lay testimony may not be ignored in considering the causal connection between employment and a heart attack.

3. WORKERS' COMPENSATION — ORDINARY DISEASES — ARTERIOSCLEROSIS.

The Workers' Disability Compensation Act does not provide compensation for a person who is afflicted with an ordinary disease of life; arteriosclerosis has been found to be an ordinary disease of life (MCL 418.401[2][b]; MSA 17.237[401][2][b]).

4. WORKERS' COMPENSATION — PRE-EXISTING DISEASES.

An employee with a pre-existing disease may recover workers' compensation benefits upon the showing of one of two things: (1) the work accelerated or aggravated the illness, disease, or deterioration, and thus contributed to it; or (2) the work, coupled with the illness, disease, or deterioration, caused an injury; injury implies something more than the changes incident to an existing disease.

5. WORKERS' COMPENSATION — DISEASES — PAIN — ARTERIOSCLEROSIS.

Pain is an aggravation of a symptom of arteriosclerosis rather than an aggravation of the disease itself.

6. WORKERS' COMPENSATION — APPEAL — LEGAL STANDARD — REASONING.

The Workers' Compensation Appeal Board stated the legal standard followed and reasoning used in reaching its decision sufficiently to permit appellate review where it appears from the board's statement of the issue that the standard it used was that the employment must cause, aggravate, or contribute to the plaintiff's disease and where the board then found that the pain that the plaintiff experienced was just a symptom of the disease.

*Sablich, Ryan, Clinton & Zolkowski, P.C.* (by *Joseph F. Sablich*), for plaintiff.

*Anderson, Green & Ingram, P.C.* (by *David L. Ingram*), for defendant.

Before: ALLEN, P.J., and MACKENZIE and J. P. SWALLOW,* JJ.

PER CURIAM. Plaintiff appeals by leave granted from an April 23, 1985, opinion and order of the Workers' Compensation Appeal Board, one member concurring in result, affirming a decision by the hearing referee denying plaintiff workers' compensation benefits. The central issue involved is whether the heavy physical exertion required by plaintiff's job sufficiently contributed to plaintiff's disease or arteriosclerosis so as to be compensable.

Plaintiff began work with the Fisher Body Division of General Motors Corporation in Lansing on November 1, 1954. After working as an inspector and welder, jobs which kept him on his feet, in 1976 or 1977 he was assigned to "set gates." Plaintiff described that job as follows: "As the gates come in, you push them into place and kick the clamps down to lock them, the tie bars, set the tulip panels and so forth, setting in the skow in the front." No further explanation was given. Swinging one end of the gate entailed moving a couple hundred pounds.

Plaintiff's legs began bothering him in 1974, before he got the "gate setting" job, but during his gate setting job the pain in his legs became severe. In October, 1977, plaintiff had just pushed a gate when he got a "hot shock" through his feet and fell over. An ambulance was summoned to take him to the hospital. A cardiovascular surgeon, Dr.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Seong Chi, found plaintiff suffered from eighty percent to ninety percent blockage of the left femoral artery and forty percent to fifty percent blockage of his right femoral artery. Surgery was performed on November 16, 1977, to replace the blocked artery in plaintiff's left leg with a plastic tube. Plaintiff attempted to return to work in February, 1978, but after three weeks he was unable to continue. He had been changed from the gate setting job to a less strenuous "line job," but the constant standing was too much for him and he was again taken from work to the hospital by ambulance. He was off work for over eight months before he attempted to return again in November, 1978. This time he lasted only a week. Eleven months later, in October, 1979, plaintiff was finally successful in returning to work.

At the hearing held December 23, 1980, before hearing referee Gerald T. Richardson, plaintiff testified at length and depositions of three medical experts, two submitted on behalf of plaintiff, were received in evidence. Plaintiff testified to the above facts and testified that the problem with his legs commenced getting worse when he was assigned to the heavy lifting and leg work of the gate setting job. During previous positions he had to do a lot of standing, and that made his legs feel "poorly" by the end of the day. The pain in his legs got severe, however, during the gate setting job where he was required to lift the end of a gate weighing several hundred pounds.

The deposition of plaintiff's treating doctor, Dr. Chi, indicated that plaintiff's problems were due to arteriosclerosis, which is not caused by the type of work an individual does, but the symptoms of arteriosclerosis may be aggravated by physical exertion such as plaintiff's job involved. Dr. Chi said that that type of excessive activity causes the

symptoms, although excessive activity outside the shop would also cause such symptoms.

Plaintiff also submitted the deposition of Dr. Edward Romond. Dr. Romond explained that the pain plaintiff was feeling in his leg was due to intermittent claudication. Claudication is a result of a vascular insufficiency problem which is brought on by exercise. The pain is present when the muscles are being used, but is relieved again when the muscles are at rest.

Defendant submitted the deposition of Dr. Richard Bates. Dr. Bates testified that plaintiff's arterial difficulty was due to his gender; his age (fifty-six); his heavy, prolonged cigarette smoking; and his heavy drinking. There was no evidence that plaintiff's disease was aggravated or caused by his work. On cross-examination, Dr. Bates admitted that, prior to plaintiff's surgery, heavy physical exertion would cause plaintiff pain until he rested.

Hearing referee Richardson denied benefits without opinion. The WCAB affirmed, with one panel member concurring in the result only. The board held that the plaintiff's extensive use of his legs on the job did not cause, aggravate, or contribute to his "arteriosclerotic condition. Rather, the exertional activities, to the extent that they generated an enhanced need for oxygenated blood, symptomatically signaled the presence of the underlying arteriosclerosis."

Although the litigants frame the issues differently, particularly issues I and II, we find three issues raised on appeal: (I) Were the WCAB's findings of fact supported by competent, material, and substantial evidence; (II) Did the WCAB correctly apply the law to the facts; (III) Was the WCAB's decision adequate to provide for appellate review?

I

Plaintiff's claim on this issue is best illustrated by the manner in which plaintiff frames the issue. Plaintiff states the issue thusly: "Whether the WCAB decision is based on sufficient evidence on the whole record inasmuch as it relies exclusively upon medical testimony distorting the legal meaning of 'cause,' while ignoring lay testimony establishing the temporal proximity of the plaintiff's collapse to a particular incident of heavy exertion on the job?" Basically plaintiff argues that the WCAB ignored the heavy physical exertion required in the "gate setting" job and relied almost exclusively on medical testimony. We are not persuaded.

Plaintiff has not alleged fraud, and the record discloses none. Findings of fact by the WCAB will be affirmed on appeal if there is competent evidence in the record to support them and there is no fraud involved. *Aquilina v General Motors Corp,* 403 Mich 206, 213; 267 NW2d 923 (1978). Thus, the relevant issue is whether there is competent evidence to support the WCAB's findings in the instant case.

Review of the transcript leads us to conclude that the board's findings of fact are amply supported by the evidence. Contrary to plaintiff's assertion, the WCAB did not consider only the medical testimony. The written decision summarizes both the lay and medical testimony. *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 131-132; 274 NW2d 411 (1979), holds that although medical testimony may be ultimately decisive, the WCAB is obligated to consider all the testimony and that lay testimony may not be ignored in considering the causal connection between employment and a heart attack. While the WCAB found the

medical evidence dispositive on the issue of causation in the instant case, there is no indication that it considered only the medical evidence. To the contrary, the decision clearly indicates that the WCAB carefully considered plaintiff's testimony, but, as permitted by *Kostamo,* ultimately found the medical testimony controlling.

II

Plaintiff contends that the WCAB improperly applied the law by focusing on the cause of the *disease* instead of on the cause of the *disability.* Further, even if plaintiff's disability was caused by arteriosclerosis, the evidence indicated that this "result" came sooner than it normally would have due to the heavy exertions required in the gate setting job. Defendant argues that it is irrelevant whether the employment aggravated the symptoms since current Michigan law requires that the testimony establish that the work contribute to the disease or cause an injury such as a heart attack.

The workers' compensation law does not provide compensation for a person afflicted with an ordinary disease of life. MCL 418.401(2)(b); MSA 17.237(401)(2)(b). Arteriosclerosis has been found to be an ordinary disease of life. *Miklik v Michigan Special Machine Co,* 415 Mich 364, 368; 329 NW2d 713 (1982). Arteriosclerosis will not necessarily prevent compensation, however. An employee with a pre-existing disease may recover upon the showing of one of two things:

> (1) The work accelerated or aggravated the illness, disease, or deterioration, and thus contributed to it; or
> (2) The work, coupled with the illness, disease,

or deterioration, caused an injury. *Kostamo, supra,* p 116.

Plaintiff argues that he may recover under either of the two prongs. Again we disagree.

Plaintiff argues that he may recover under the first prong because the proofs clearly show that his work aggravated his symptoms by causing pain in his legs and this is sufficient aggravation to allow compensation. *Kostamo* and two of the cases consolidated with it[1] held that compensation is not merited just because the worker cannot work without pain. Pain is an aggravation of a symptom of arteriosclerosis rather than an aggravation of the disease itself.

> Therefore, whatever the stress of the jobs, there was no injury. Since stress does not aggravate arteriosclerosis, the WCAB decisions denying them compensation must be affirmed. Although there is a causal relationship between the underlying disability, arteriosclerosis, and Fiszer's and Hannula's inability to continue working, that disability was not caused and could not have been aggravated by their employment. [*Kostamo,* 118.]

Concerning the second prong, plaintiff argues that the physical exertion required of his gate setting job coupled with his arteriosclerosis caused an "injury," i.e., intermittent claudication, just as stress coupled with arteriosclerosis can cause a heart attack. Intermittent claudication is described in *Stedman's Medical Dictionary, Third Unabridged Lawyers' Edition* (1972), p 258, as "a condition caused by ischemia of the leg muscles due to sclerosis with narrowing of the arteries of the legs; it is characterized by attacks of lameness and pain,

---

[1] *Hannula v Cleveland-Cliffs Iron Co; Fiszer v White Pine Copper Co.*

brought on by walking, chiefly in the calf muscles." Plaintiff's medical expert, Dr. Chi, described claudication as the pain a victim of arteriosclerosis feels when his muscles require more oxygen because of exertion and the victim's body cannot provide enough blood fast enough to supply the muscles with oxygen. The pain would be transient, depending on the amount of exertion. Dr. Chi also diagnosed plaintiff as having trans-ischemic attacks. The cause of the attacks is a lack of circulation to the brain. The symptoms can include blackout spells, numbness, tingling sensations, blurred vision, or sluggish speech. Both intermittent claudication and trans-ischemic attacks were caused by plaintiff's arteriosclerosis.

Plaintiff's argument is of first impression. Answering the argument is made difficult by the lack of specific medical testimony regarding the effect of intermittent claudication and trans-ischemic attacks on plaintiff's body. The issue is whether these caused further damage to the body amounting to "an injury" as defined under the second *Kostamo* prong, or are just the name for the symptoms of advanced arteriosclerosis. Only the former is compensable.

A panel of this Court allowed compensation for a worker suffering myocardial ischemia produced by arteriosclerosis, *Peterson v White Pine Copper Co,* 93 Mich App 742; 286 NW2d 911 (1979). The Supreme Court vacated that decision and remanded to the WCAB for a determination of whether plaintiff suffered a heart injury or merely was unable to do strenuous work because of his disease of arteriosclerosis. 408 Mich 913 (1980). In the instant case, plaintiff had this same burden.

Plaintiff, however, elicited no testimony indicating that either intermittent claudication or trans-ischemic attacks are separate "injuries" or cause

further damage. According to *Miklik, supra,* it is the heart damage that results from a heart attack that is compensable. Thus plaintiff must prove that he suffered damage due to his claudication or attacks. No such proof was offered. According to the depositions of the medical experts, plaintiff's left femoral artery was eighty percent to ninety percent blocked both before and after the pain he suffered. Injury implies something more than the changes incident to an existing disease. *Marman v Detroit Edison Co,* 268 Mich 166, 167; 255 NW 750 (1934).

Under the Supreme Court's ruling in *Peterson,* plaintiff's claim, though well presented, must be denied. Plaintiff is on the same footing as plaintiffs in *Fiszer* and *Hannula.* The pain he experienced prohibited him from performing the strenuous work the job required him to do. Dr. Chi's deposition testimony was unequivocal that work does not affect arteriosclerosis. Thus, in the absence of proofs that intermittent claudication or trans-ischemic attacks are separate "injuries," we cannot find error under issue II.

III

Finally, plaintiff argues that because the WCAB did not discuss whether his employment acted in combination with that disease to result in his *disability,* and also failed to discuss whether the heavy exertion of plaintiff's job contributed to bringing about the disability sooner than if the exertion had never taken place, even if the disability was largely due to the underlying disease, the decision is inadequate for appellate review.

The portion of the WCAB's decision stating the legal standard followed and the reasoning used was brief but adequate. From the board's state-

ment of the issue, it appears that the standard it used was that the employment must cause, aggravate, or contribute to plaintiff's disease. Then the WCAB found that the pain plaintiff experienced was just a symptom of the disease. In our opinion, the WCAB stated the standard and reasoning used sufficiently to permit appellate review.

Affirmed.