McVEY v GENERAL MOTORS CORPORATION

Docket No. 88930. Submitted December 2, 1986, at Detroit. Decided March 27, 1987. Leave to appeal applied for.

The Workers' Compensation Appeal Board affirmed a referee's decision awarding plaintiff, Mont McVey, an open benefit of $147 per week for plaintiff's total disability as a result of both a work-related heart condition, i.e., arteriosclerosis, and a work-related nervous condition. Plaintiff's employer, defendant General Motors Corporation, appealed by leave granted.

The Court of Appeals *held:*

1. General allegations of stress and anxiety on the job over a period of time do not satisfy the requirement of proof of a relationship between a claimant's heart condition and specific incidents or events at work which could reasonably be construed as precipitating the claimant's heart condition.

2. Plaintiff's nervous condition was diagnosed by plaintiff's psychiatrist as being a result of his heart condition, but because plaintiff has failed to prove that his heart condition was work-related or that his nervous condition prevented him from performing his job duties, plaintiff has also failed to prove the merits of his mental disability claim.

Reversed.

1. WORKERS' COMPENSATION — FINDINGS OF FACT.

Findings of fact in workers' compensation proceedings are conclusive in the absence of fraud (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

2. WORKERS' COMPENSATION — FINDINGS OF FACT — APPEAL.

Appellate courts review findings of fact in workers' compensation proceedings only to determine whether there is any competent evidence to support them.

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 240 *et seq.*; 289 *et seq.*; 301, 549-552, 613 *et seq.*; 631.

Mental disorders as compensable under workmen's compensation acts. 97 ALR3d 161.

Liability, under Federal Employers' Liability Act (45 USC § 51 *et seq.*) for industrial or occupational disease or poisoning. 30 ALR3d 735.

3. Workers' Compensation — Work-Related Injury — Arterio-
    sclerosis.

A determination by the Workers' Compensation Appeal Board
that a claimant was entitled to benefits on the basis of the
aggravation of an arteriosclerotic condition by general stress,
anxiety and exertion on the job without considering whether
the claimant suffered heart damage and without linking a
specific cardiac episode with a specific incident in the workplace
was insufficient at a time when the law was that ordinary
diseases of life were not compensable (MCL 418.401[c]; MSA
17.237[401][c]).

4. Workers' Compensation — Work-Related Injury — Mental
    Disorder.

A claimant is entitled to workers' compensation benefits for a
mental injury which disables him where his employment com-
bined with some preexisting internal weakness or disease to
produce the injury which disabled him.

5. Workers' Compensation — Mental Disorder — Reactive De-
    pression.

A worker may not claim workers' compensation benefits for
"reactive depression" over a heart condition which is not work-
related.

*Chambers, Steiner, Mazur, Ornstein & Amlin,
P.C. (by Alexander T. Ornstein), for plaintiff.*

*Plunkett, Cooney, Rutt, Watters, Stanczyk &
Pedersen (by Jonathan T. Kopit and Paul F. Pater-
noster), for defendant.*

Before: J. H. Gillis, P.J., and Shepherd and
W. A. Porter,* JJ.

Per Curiam. Defendant, General Motors Corpo-
ration, appeals by leave granted from an opinion
and order of the Worker's Compensation Appeal
Board granting plaintiff an open benefit award of
$147 per week. The WCAB found that plaintiff had
established by a preponderance of the evidence
that he was totally disabled as the result of both a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

work-related heart condition and a work-related nervous condition. We reverse.

Plaintiff began working for defendant in 1954 as a journeyman electrician. For several years, plaintiff's job assignment alternated between electrical construction work and repair welding. However, approximately in 1970, plaintiff began working in the control room. His tenure there lasted approximately seven years.

The control room was small, approximately six feet by twenty feet. Control panels lined the walls. Whenever a bell rang, it was plaintiff's responsibility to shut down the line. This would occur on the average of five to six times a day. Frequently, plaintiff was reminded by supervisory personnel that the plant lost money every time the line was shut down. Each time plaintiff restarted the line, he was concerned that workers might be injured if they were not clear of the line.

After he left the control room assignment, plaintiff returned to electrical construction work. Plaintiff testified that the younger electricians made him nervous. They seemed better educated and more knowledgeable than he and could do mathematical computations faster. Plaintiff worked in this capacity approximately eight months until June 9, 1978.

Plaintiff testified that on June 9, 1978, nothing unusual happened. He reported to work at his normal time, 6:00 A.M. Somewhere between 11:30 A.M. and the end of the shift, plaintiff began having chest pains and "shakes" and feeling nauseous and weak. Plaintiff reported to the first-aid station, but later returned to work and completed the shift. Plaintiff testified that he had had such symptoms on several occasions prior to this date. On such occasions, plaintiff would take a nitroglyc-

erin pill which would normally relieve the symptoms.

After he completed the work shift, plaintiff walked to his car and drove home. When he arrived home, he laid down on the couch and told his wife about what had happened. She insisted that he go to the emergency room of Pontiac General Hospital.

Plaintiff was admitted as an in-patient and remained hospitalized until June 18, 1978. While there, an electrocardiogram and enzyme studies were performed. No evidence was obtained showing that plaintiff had suffered a myocardial infarction, or in layman's terms, a heart attack. The final diagnosis was that defendant had arteriosclerotic heart disease with angina and suffered from an "anxiety state."

On August 24, 1978, plaintiff was admitted to St. Joseph Hospital in Pontiac with a diagnosis of "impending myocardial infarction." However, he was later discharged without any indication that an infarction had occurred.

In October of 1978, plaintiff was admitted to the Cleveland Clinic, where a quintuple bypass operation was performed, apparently to relieve the angina pain. After this operation, plaintiff no longer experienced chest pains. Thereafter, plaintiff and his wife moved to Tennessee.

Plaintiff never returned to work after June 9, 1978. On July 17, 1979, over a year later, plaintiff filed the instant petition seeking workers' compensation benefits. He alleged that the stress and strains of his employment caused or aggravated both his heart condition and his nervous condition. On April 9, 1980, plaintiff amended his petition and added a claim of total, permanent disability arising from "industrial insanity."

During the hearing on the petition, evidence was

introduced that plaintiff had smoked at least a pack of cigarettes per day since he was ten or twelve years old, that he had had surgery on an ulcer in 1965, and that he had suffered a stroke in 1972. On the date of the hearing, plaintiff was sixty-three years old.

Plaintiff also introduced expert medical testimony that linked plaintiff's medical problems to his work environment. Dr. Herschel Mozen, a thoracic surgeon, was one of the experts who testified for plaintiff. His final diagnosis was myocardial ischemia and arteriosclerotic heart disease. He also testified that his findings were consistent with "remote myocardial infarction." Defendant introduced expert medical testimony to refute plaintiff's allegation that his medical problems were work-related. Further facts are presented within the discussion of the issues.

A referee found that plaintiff had satisfied his burden of proving both a work-related heart and nervous condition. The WCAB affirmed.

Defendant first argues that the WCAB failed to indicate a specific link between the plaintiff's heart damage and his work. We agree.

In workers' compensation proceedings, findings of fact by the WCAB are conclusive in the absence of fraud. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861). Appellate courts review such findings only to determine whether there is any competent evidence to support them. *Burns v General Motors Corp,* 151 Mich App 520, 528; 391 NW2d 396 (1986); *Weinmann v General Motors Corp,* 152 Mich App 690, 695; 394 NW2d 73 (1986).

In all successful workers' compensation cases, the claimant must demonstrate both a personal injury and a relationship between the injury and the workplace. *Miklik v Michigan Special Machine Co,* 415 Mich 364, 366; 329 NW2d 713 (1982). In

heart cases, the first question is whether there is heart damage.[1] The second question, which is the issue here, is whether the heart damage can be linked by sufficient proof to the employment. *Id.*

In *Miklik, supra* at 370, the Supreme Court described the causal nexus which must exist between the heart damage and the workplace:

> There must be a relationship proved between the damage and *specific* incidents or events at work. General conclusions of stress, anxiety, and exertion over a period of time do not satisfy this second requirement. There must be enough detail about that which precipitated the heart damage to enable the factfinder to establish the legal connection by a preponderance of the evidence. [Emphasis in original.]

Rather than providing details of the specific events which precipitated plaintiff's heart condition, plaintiff's testimony consisted only of general allegations of stress and anxiety over a period of time. Plaintiff himself testified nothing unusual happened on his last day of work. Thus, plaintiff has failed in his burden of proof by not showing *specific* incidents and events at work which could be reasonably construed as precipitating plaintiff's

---

[1] In *Kostamo v Marquette Iron Mining Co*, 405 Mich 105; 274 NW2d 411 (1979), the Supreme Court held that arteriosclerosis is an "ordinary disease of life" and thus was not compensable under MCL 418.401(c); MSA 17.237(401)(c). However, the Court also held that a worker who suffers work-related heart damage may receive workers' compensation benefits for heart damage caused or aggravated by his employment even if the worker had arteriosclerosis, a disease which makes a person more susceptible to heart damage. In the instant case, defendant does not raise the issue of whether plaintiff has suffered heart damage beyond the mere progressive effects of arteriosclerosis. Thus, we decline to address that issue.

We also note at this point that plaintiff's alleged injury occurred prior to January 1, 1982, the date on which MCL 418.401(c); MSA 17.237(401)(c) was effectively amended. Thus, our decision is an interpretation of the statutory language which was in effect at the time of injury: "Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable."

heart condition. Plaintiff himself testified nothing unusual happened on his last day of work. Such general testimony does not fulfill the test for establishing a causal relationship. The fact that plaintiff experienced chest pains while working is not sufficient. *Acoff v General Motors Corp,* 155 Mich App 184; 400 NW2d 95 (1986). See also *Moreno v Campbell, Wyant & Cannon Foundry,* 142 Mich App 648, 654; 369 NW2d 867 (1985), lv den 423 Mich 852 (1985). For a case in contrast see *Burns v General Motors Corp, supra,* where the proof introduced at the hearing was of sufficient specificity. We hold that the WCAB's conclusion that plaintiff had shown a work-related heart condition is not supported by competent evidence.

Defendant next argues that the WCAB erred when it found plaintiff to be psychologically disabled. Again, we agree.

The Supreme Court in *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1, 37; 268 NW2d 1 (1978),[2] set forth three questions which must be answered in the affirmative and supported by the record in order for a plaintiff to be awarded compensation in mental injury cases: (1) whether the claimant is disabled; (2) whether a personal injury (a precipitating, work-related event) occurred; and (3) whether the claimant's employment combined with some internal weakness or disease to produce the disability.

In the instant case, plaintiff testified only to the fact that he had had trouble with his "nerves" for several years. There was no testimony that his

---

[2] After *Deziel* was decided, the Legislature amended the statutory language upon which it was based, effective January 1, 1982. MCL 418.301(2); MSA 17.237(301)(2) and MCL 418.401(c); MSA 17.237(401)(c). However, *Deziel* remains applicable to the instant case because the alleged injury occurred before the effective date of the amendment. *Peters v Michigan Bell Telephone Co,* 423 Mich 594; 377 NW2d 774 (1985).

nervous condition prevented plaintiff from performing his duties during this time. Nor had plaintiff ever treated with a psychiatrist either before or after his last day of work. Plaintiff's only contact with a psychiatrist was after the instant petition for benefits was filed. Plaintiff's appointment with Dr. Michael Short was set up by his attorney. At the hearing, plaintiff testified concerning that appointment: "I couldn't see any reason why I should be seeing a psychiatrist." Dr. Short testified that, despite plaintiff's denials, it was his opinion that plaintiff was suffering from "reactive depression." Dr. Short opined that if plaintiff returned to work he would again find himself in a stressful condition and that another stress reaction would in turn create a great likelihood of a fatal heart episode. It was Dr. Short's opinion that it was stress that had aggravated plaintiff's heart problems originally and that, because plaintiff's physical well-being had deteriorated, plaintiff was experiencing reactive depression.

From the above, it is evident that plaintiff does not have a legally cognizable psychiatric disability. Plaintiff's mental state of mind is a product of his heart condition, which we have concluded is not work-related. If we were to conclude that such depression gives rise to a separate and distinct basis for awarding workers' compensation, we would be divesting *Miklik* of its meaning. It would be inconsistent to hold that general allegations of workplace stress are insufficient to establish a work-related heart injury but then conclude that such a nonwork-related injury is compensable if depression results from it. In the instant case, plaintiff's state of mind can be no more related to his work than the physical injury that Dr. Short concluded was its cause. The fact that plaintiff

"honestly perceived" that his mental condition arose from his employment is not relevant. We base our decision on the application of the instant facts to the first two questions set forth in *Deziel*. *Deziel's* subjective causal nexus standard is applicable only to the third inquiry. *Deziel, supra* at 37.

We also note that the Supreme Court in *Kostamo v Marquette Iron Mining Co*, 405 Mich 105, 116; 274 NW2d 411 (1979), held:

> Nor is a different result required because debility has progressed to the point where the worker cannot work without pain or injury. Accordingly, compensation cannot be awarded because the worker may suffer heart damage which would be work-related if he continued to work.

In light of our resolution of the above issues, the other issues raised on appeal need not be addressed.

The order of the WCAB is reversed. Plaintiff's petition is dismissed.