## COX v SCHREIBER CORPORATION

Docket No. 118774. Submitted October 9, 1990, at Lansing. Decided April 1, 1991, at 10:00 A.M. Leave to appeal sought.

James M. Cox was awarded workers' compensation benefits from January 9, 1981, to January 24, 1981, by a hearing referee as a result of a work-related injury. The Court of Appeals denied leave to appeal. Docket No. 107507. The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 432 Mich 916 (1989). The plaintiff claims entitlement to continuing benefits for a disability due to aggravation of a preexisting condition.

The Court of Appeals *held:*

The finding of fact by the Workers' Compensation Appeal Board that Cox suffered from a preexisting condition that exhibited symptoms from the time of the January 7, 1981, injuries is supported by the record; however, the appeal board erred as a matter of law by refusing to grant an award of continuing benefits for disability due to the aggravation of a preexisting condition. Where, as here, a work-related injury aggravates or accelerates a preexisting condition and causes continuing pain which is so severe that the worker is unable to work, the worker is entitled to an award of continuing benefits, even if the preexisting condition without the work-related injury eventually would have rendered the worker unable to work.

Reversed and remanded.

WORKERS' COMPENSATION — WORK-RELATED INJURIES — AGGRAVATION OF PREEXISTING CONDITIONS.

A continuing award of workers' disability compensation benefits is appropriate where it is found that a work-related injury accelerated or aggravated a preexisting condition to the point of disability, leaving the employee worse off than before the injury and causing so much pain that it is impossible for the

REFERENCES

Am Jur 2d, Workmen's Compensation § 293.

Pleading aggravation of a pre-existing physical condition. 32 ALR2d 1447.

employee to continue to work, even where the preexisting condition without the work-related injury eventually would have rendered the employee unable to work; in such a case the increase in pain cannot be said to be merely an exacerbation of symptomatology which would leave the employee no worse off once the symptoms subside.

*James W. Vihtelic,* for the plaintiff.

*Nystrom, Nystrom & Hitchcock* (by *Dennis H. Nystrom* and *David J. Montera*), for the defendants.

Before: Gillis, P.J., and Michael J. Kelly and Neff, JJ.

Neff, J. Plaintiff sustained an injury while working as a roofer for defendant Schreiber Corporation and has not been able to return to roofing work. He was awarded workers' compensation benefits until January 24, 1981. The Workers' Compensation Appeal Board granted benefits until July 29, 1982. Plaintiff filed a motion for leave to appeal to this Court, which was denied. By order dated June 27, 1989, our Supreme Court, in lieu of granting leave to appeal, remanded the case to this Court for consideration as on leave granted. 432 Mich 916 (1989). Plaintiff argues that the wcab erred in not awarding him a continuing benefit for disability due to the aggravation of a preexisting condition. We agree and reverse.

I

On January 7, 1981, plaintiff, a journeyman roofer, was working for Schreiber Corporation on a metal surface. Because it had snowed the night before, plaintiff worked shoveling snow off the slippery surface. He fell several times. About 1½ hours after starting work, he started experiencing

back pain that grew progressively worse. By 4:30 P.M. he could barely stand erect. Plaintiff had not been experiencing pain before this date.

After work, plaintiff visited his physician, Dr. Anderson, who recommended moist heat. Plaintiff testified that the pain was throughout his lower pelvic area, including both hips, although he did not remember specifically mentioning the hip pain to Dr. Anderson or the Maybury Clinic, which he visited the following day. However, the Maybury Clinic report states: "Pain is mostly localized but at times radiates to both buttocks."

After about three weeks of treatment, plaintiff asked to be returned to work, and Dr. Anderson consented. However, because of weather conditions, no work was available. On February 20, 1981, plaintiff returned to Dr. Anderson, complaining that the pain in the lower pelvic area was worse. Dr. Anderson, who testified that this was the first complaint of right hip pain, referred plaintiff to Dr. Najarian, an orthopedist.

Dr. Najarian treated plaintiff for about three weeks, during which time the pain increased so much that plaintiff had to start using crutches. Plaintiff was then referred to an orthopedic surgeon, Dr. O'Hara, who performed surgery on the right hip in May 1981 and on his left hip in January 1982.

Dr. O'Hara diagnosed plaintiff's hip condition as aseptic necrosis of both femoral heads or hip joints. Aseptic, or avascular, necrosis is a condition in which the ball of the joint loses blood supply and dies. The cause of the condition is unknown. As a result of the bone death, the bone margins break under stress, causing pain.

Dr. Newman testified that repetitive activity involving the hips would aggravate the aseptic necrosis condition. The onset of problems would

normally take many months or years to appear, but, with heavy activities, problems could appear in a matter of a few months. However, if activities such as kneeling were having an effect on the hip bones, a patient would be symptomatic. The condition is permanent and progressive. Surgery for revascularization, the surgery performed on both of plaintiff's hips, may arrest softening of the bone.

Defendants' witness, Dr. Horvath, an orthopedic surgeon, testified that repetitive bending activities could cause a deterioration of the femoral heads in someone with aseptic necrosis, but if this had been occurring with plaintiff, he would have experienced symptoms. He further testified that if the January 7, 1981, trauma had caused the aseptic necrosis problems, plaintiff would have experienced hip pain immediately. He did not believe that plaintiff's disability was related to his roofing job.

Although the surgery was successful and plaintiff was making a good recovery, Drs. Newman, O'Hara, and Horvath each stated that plaintiff could not return to employment such as roofing. Dr. Horvath's opinion upon examining plaintiff on June 21, 1982, was that plaintiff's disability from the hip condition would end when he was able to stop using crutches. On July 29, 1982, Dr. O'Hara directed plaintiff to undertake weight-bearing activities on both hips.

Following a hearing on January 19, 1983, at which plaintiff testified and the doctors' depositions were entered into the record, the hearing referee awarded benefits to plaintiff from January 8 to January 24, 1981, finding that plaintiff did not establish a disability beyond that date. On appeal, the WCAB extended the benefits to July 29, 1982, finding that the work injuries aggravated and accelerated plaintiff's aseptic necrosis.

II

Plaintiff contends that he has had a legal disability ever since his last date of employment with defendant, a disability attributable to the January 7, 1981, injury, and that he is entitled to a further award of benefits.

This Court's review of a WCAB decision is limited. The WCAB's findings of fact are conclusive, absent fraud, if there is any support in the record evidence. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861); *Coleman v General Motors Corp,* 166 Mich App 784, 789; 421 NW2d 295 (1988). This Court may reverse the WCAB's decision if it operated within the wrong legal framework or its decision is based upon erroneous legal reasoning. *Id.; Flynn v General Motors Corp,* 162 Mich App 511, 514; 413 NW2d 444 (1987).

A review of the record shows support for the WCAB's finding that plaintiff's aseptic necrosis was a preexisting condition that exhibited symptoms from the time of the January 7, 1981, injuries. The WCAB had evidence from plaintiff, whom they found credible, of the complaints of hip pain stemming from January 7, as well as the Maybury Clinic's note of pain extending into the buttocks. *Nezdropa v Wayne Co,* 152 Mich App 451, 461; 394 NW2d 440 (1986).

Although the factual basis of the WCAB decision should not be faulted, the legal reasoning must be examined. Workers' compensation benefits are payable for an illness, disease, or deterioration not caused by working conditions, i.e., a preexisting condition, only if the work has accelerated or aggravated the preexisting condition and has thus contributed to it, or if the work, coupled with the preexisting condition, caused an injury. *Kostamo v*

*Marquette Iron Mining Co,* 405 Mich 105, 116; 274 NW2d 411 (1979); *Nezdropa, supra,* p 460.

In *Kostamo, supra,* p 116, our Supreme Court stated:

> The workers' compensation law does not provide compensation for a person afflicted by an illness or disease not caused or aggravated by his work or working conditions. Nor is a different result required because debility has progressed to the point where the worker cannot work without pain or injury. Accordingly, compensation cannot be awarded because the worker may suffer heart damage which would be work-related if he continued to work. Unless the work has accelerated or aggravated the illness, disease or deterioration and, thus, contributed to it, or the work, coupled with the illness, disease or deterioration, in fact causes an injury, compensation is not payable.

In *McQueen v General Motors Corp,* 166 Mich App 418, 425; 421 NW2d 187 (1988), a panel of this Court, citing *Weinmann v General Motors Corp,* 152 Mich App 690, 697; 394 NW2d 73 (1986), extended the statement from *Kostamo* that compensation is not merited just because the worker cannot work without pain to mean that pain is an aggravation of a symptom of arteriosclerosis (the disease involved in that case) rather than an aggravation of the disease itself. In *Weinmann,* the Court also stated that pain is an aggravation of a symptom of the disease rather than an aggravation of the disease itself. Similarly, in *Thomas v Chrysler Corp,* 164 Mich App 549; 418 NW2d 96 (1987), the Court affirmed the WCAB's closed award of benefits because the plaintiff's employment caused, at most, an exacerbation of symptomatology and did not cause or aggravate the plaintiff's underlying condition.

In this case, the WCAB cited two cases, *Durham v Chrysler Corp,* 128 Mich App 102; 339 NW2d 705 (1983), and *Castillo v General Motors Corp,* 105 Mich App 776; 307 NW2d 417 (1981), where each of the plaintiffs had a preexisting anatomical condition, thoracic outlet syndrome, which caused pain and dizziness under the stress of bending, lifting, and raising the arms over the head repetitively. However, medical testimony showed that the symptoms would subside upon cessation of these activities. In both cases, this Court held that the workers were not entitled to continuing benefits because the pain was just a symptomatic manifestation of the preexisting condition, not an aggravation of the condition.

Similarly, in *Thomas* the worker suffered from recurring bouts of dermatitis or pimples caused by the moisture, grease, and oil in the work environment. The WCAB found that the dermatitis was a preexisting condition and that the employment "caused at most an exacerbation of the symptomatology." *Thomas, supra,* pp 553-554. This Court affirmed the WCAB's limitation of benefits to the period when the worker was disabled by acute symptoms.

We believe these cases from our Court have expanded the language in *Kostamo* far beyond its context and applicability. Our Supreme Court stated in *Kostamo* that a claimant is not entitled to workers' compensation disability benefits merely because he cannot work without pain. This does not mean that a claimant is not entitled to workers' disability compensation benefits where his pain from a work-related injury or disability is so severe that he cannot work because of the pain. Awarding or withholding benefits on the basis of whether pain is a symptomatic manifestation of a preexisting condition rather than an aggravation of a preexisting condition is a distinction without a

difference. See Judge SHEPHERD's concurrence in *Thomas, supra,* p 558.

In any event, plaintiff's situation can be distinguished from the "exacerbation of symptoms" cases. Unlike the cases where the worker recovers from a bout of dermatitis or the pain of thoracic outlet syndrome and then returns to the same condition as before the trauma, in this case, plaintiff's hips were not in the same condition as they were before January 7, 1981. While plaintiff probably would have become disabled at some time because of the aseptic necrosis, the WCAB found that the events of January 7, 1981, aggravated the underlying condition and "accelerated the inevitable." For the WCAB to then state that this was just an exacerbation of symptomatology was incorrect.

This was not, as in *Castillo, Durham,* and *Thomas,* just a matter of particular work conditions not being suitable for a worker with a preexisting condition, but leaving the worker no worse off once the work-caused symptoms subsided. Here, plaintiff's work conditions accelerated or aggravated his preexisting condition to the point of disability and left him worse off, although in a condition he probably would have reached inevitably with time. Because his January 7, 1981, injuries were found to have accelerated or aggravated his preexisting aseptic necrosis condition, plaintiff is entitled to continuing benefits, not just the closed award for exacerbation of symptoms. *McDonald v Meijer,* 188 Mich App 210; — NW2d — (1991).

III

Because the WCAB applied erroneous legal reasoning, we reverse and remand this case to the WCAB for entry of an order consistent with this opinion which grants plaintiff an open award of benefits. We do not retain jurisdiction.