PULVER v DUNDEE CEMENT COMPANY

Docket No. 94989. Argued January 11, 1994 (Calendar No. 1). Decided
    May 3, 1994.

   Carolyne L. Pulver suffered a compensable injury to her wrist in
      the course of her employment with Dundee Cement Company
      and was paid worker's compensation. After trying to secure
      work within her medical restrictions for over a year, she moved
      to Florida. Thereafter she was notified that a job within her
      restrictions was available. However, she rejected the offer
      because she considered herself a permanent resident of Florida,
      and the defendant stopped paying benefits. A hearing referee
      found that although the employer had made a bona fide offer of
      favored work, the plaintiff's refusal of the offer was reasonable
      and ordered benefits continued. The Worker's Compensation
      Appeal Board affirmed. The Court of Appeals, WEAVER, P.J.,
      and TAYLOR, J. (WAHLS, J., dissenting), reversed, holding that
      the board's decision was based on an error of law (Docket No.
      137082). The plaintiff appeals.

   In an opinion by Chief Justice CAVANAGH, joined by Justices
      LEVIN, BOYLE, and MALLETT, the Supreme Court held:

   Good and reasonable cause is the statutory equivalent of the
      similar requirement found in the judicially created favored-
      work doctrine. Whether an employee's refusal of reasonable
      employment is for good and reasonable cause is a question of
      fact. Because the correct legal test was applied by the Worker's
      Compensation Appeal Board, its factual findings should not
      have been disturbed.

   1. In determining whether a refusal of reasonable employ-
      ment is for good and reasonable cause, the dispositive questions
      are ones of fact, not law. Findings of fact in worker's compensa-
      tion proceedings, if supported by any competent evidence, are
      conclusive. Examples of some factors to consider in gauging
      reasonableness may include the timing of the offer; if the
      employee has moved, the reasons for moving; the diligence of
      the employee in trying to return to work; whether the em-

REFERENCES
Am Jur 2d, Workers' Compensation §§ 399, 609.
See ALR Index under Workers' Compensation.

ployee has actually returned to work with some other employer; and whether the effort, risk, sacrifice, or expense is of the type that would cause a reasonable person not to accept the offer. It is left to the sound discretion of the factfinder to carefully examine the facts and circumstances of each case to determine what is good and reasonable cause in a given situation.

2. In this case, the Worker's Compensation Appeal Board applied the correct legal test, and there is competent evidence to support its factual findings. The Court of Appeals should not have disturbed the findings of the board, requiring reversal of its decision, reinstatement of the decision of the board, and remand to the board for further proceedings.

Reversed and remanded.

Justice RILEY, joined by Justices BRICKLEY and GRIFFIN, dissenting, stated that while the determination whether an employee's refusal of favored work is reasonable is essentially a factual question, the determination whether the WCAB or the WCAC applied the correct criteria in analyzing whether the refusal was reasonable is not a question of fact. Thus, the Supreme Court is not constrained by the limited review applicable to factual findings. The guiding principle in determining whether a refusal of employment is reasonable should be whether such a refusal advances the policies of worker's compensation litigation. Failure to properly consider the policy favoring mitigation, therefore, is an error of law that is not insulated from appellate review.

The reasonableness of an employee's rejection of a bona fide offer of reemployment must take into account more than the employee's motivation for the move into a new locale. A factual balancing of interests is required under the totality of the circumstances that includes whether the employee has found alternate employment, the duration of the employee in the new locale, and the nature of any roots that the employee or family members have established in the new community. Without this inquiry a factual assessment of reasonableness is incomplete, and a ruling by the WCAB or the WCAC that does not assess the facts in light of the purposes of the worker's compensation act is insufficient as a matter of law.

196 Mich App 91; 492 NW2d 778 (1992) reversed.

WORKER'S COMPENSATION — OFFERS OF REASONABLE EMPLOYMENT — REFUSAL OF OFFERS — QUESTIONS OF FACT.

Whether an employee's refusal of a bona fide offer of reasonable employment is for good and reasonable cause is a question of fact, not of law (MCL 418.301[5][a]; MSA 17.237[301][5][a]).

*Zamler, Mellen & Shiffman, P.C.* (by *Donald Shiffman* and *Joel W. Jonas*); (*Daryl Royal,* of counsel), for the plaintiff.

*Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, P.C.* (by *Thomas L. Fleury* and *Christopher M. Murray*), for the defendant.

Amicus Curiae:

*Jordan Rossen,* General Counsel, and *Ralph O. Jones,* Associate General Counsel, for International Union, United Automobile, Aerospace & Agricultural Implement Workers of America-UAW.

CAVANAGH, C.J.

I

In this worker's compensation matter, we must construe MCL 418.301(5)(a); MSA 17.237(301)(5)(a),[1] and determine what constitutes "good and reasonable cause" justifying an employee's refusal of a bona fide offer of reasonable employment.[2]

We hold that "good and reasonable cause" is the

---

[1]  If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal.

[2] Plaintiff disputes the conclusion that the job offered met the statutory definition of "reasonable employment." We find that this issue is not properly preserved because plaintiff failed to cross appeal on this issue. See *Booth Newspapers, Inc v Univ of Michigan Bd of Regents,* 444 Mich 211, 234; 507 NW2d 422 (1993). We assume, without deciding, that the offer was indeed a bona fide offer of reasonable employment.

statutory equivalent of the similar requirement found in the judicially created favored-work doctrine. Since the Legislature incorporated this common-law requirement into the worker's compensation act without specifically defining it, we assume that the Legislature did not intend to change the common law.

Whether an employee's refusal of reasonable employment is for good and reasonable cause is a question of fact. Questions of fact are committed to the discretion of the WCAC.[3] In the absence of fraud, the WCAC's findings of fact are binding on the courts of this state if there is any competent evidence supporting them.

II

It is undisputed that plaintiff suffered a compensable injury to her wrist in August 1984. It is also undisputed that she suffers an ongoing total disability.

Plaintiff's injury initially caused her to miss five days of work. She eventually returned to her job and worked until March 1985 with various medical restrictions. Her last day was March 5, 1985, at which time defendant began paying benefits.

Corrective surgery was performed on her wrist that March, but she never regained the complete use of her hand. After the surgery she saw several doctors and therapists, but could not return to work because defendant failed to offer work suitable to her medical restrictions. Plaintiff regularly called defendant regarding the availability of work. Defendant regularly informed her that none was available.

Plaintiff's treating physician concluded that she

---

[3] And formerly, as in this case, the WCAB.

was permanently disabled in October 1985. Unhappy with this diagnosis, defendant sent her to one of its doctors. Defendant's doctor examined her and placed her on disability for six additional weeks.

Approximately six weeks later, plaintiff returned to work and received "favored work"—sweeping floors. She quickly discovered, however, that she could not perform this job without aggravating her wrist. Defendant and plaintiff's union came to an agreement, and plaintiff was sent home that day with the understanding that defendant would continue to pay benefits.

On May 27, 1986, defendant sent plaintiff to see another doctor. That doctor concluded that plaintiff could not return to her former job and that it was very likely that she was permanently disabled.

Shortly after this diagnosis, and after having tried to secure work within her restrictions for well over a year, plaintiff decided to move to Florida. This allowed her to be closer to her family, and she believed the warm weather was better for her wrist. On June 27, 1986, she notified defendant in writing that she was moving and that any further correspondence could be directed to her new address in Florida or to her attorney.[4] Plaintiff sold all of her belongings and left.

In a letter mailed July 15, 1986, and received July 28, 1986,[5] defendant notified plaintiff that a job within her restrictions was now available. After first stalling for time to consult her attorney, she eventually rejected this offer because she now considered herself a permanent resident of Flor-

[4] Both the WCAB and Court of Appeals noted an unfortunate communication problem between the parties that led to defendant's failure to realize that plaintiff had permanently relocated to Florida.

[5] Defendant failed to place the proper postage on the letter.

ida. Defendant stopped paying benefits and plaintiff began this action.

At the hearing, the magistrate held that plaintiff's refusal of defendant's bona fide offer of "favored work"[6] was reasonable. On appeal, the WCAB affirmed.

> [W]e find from the facts that plaintiff had relocated to Florida in June of 1986 and intended to stay in Florida on a permanent basis. Plaintiff was attempting to seek work in Florida, had signed a lease with the condominium association, and was reliant upon family members as she had sold all of her possessions prior to leaving Toledo, Ohio. We find that plaintiff was credible in her testimony and accept that she planned to reside in Florida on a permanent basis. The record discloses that there was nothing to her knowledge that would have her return to Michigan since at the time of her move she did not know that defendant was seeking favored work for her. [Unpublished decision of the WCAB, mailed December 20, 1990 (Decision No. 1617), slip op at 6.]

The WCAB concluded, as did the magistrate, that defendant had made a bona fide offer of "favored work," but that plaintiff's refusal was reasonable.

Defendant appealed, again arguing that plaintiff's refusal was unreasonable. Plaintiff failed to cross appeal on the issue whether the job offer was a bona fide offer of reasonable employment. A divided Court of Appeals reversed the WCAB.

> The only disputed issue properly before us in this appeal is whether plaintiff unreasonably re-

---

[6] It is clear that this case should have focused on the statutory requirements of reasonable employment because this case is governed by MCL 418.301(5); MSA 17.237(301)(5). For the purposes of this opinion, however, we will ignore this error.

fused defendant's bona fide offer of favored work. We conclude that the appeal board's decision that plaintiff is entitled to continuing benefits because her refusal of favored work was reasonable is based on an error of law and should therefore be reversed.

\* \* \*

[I]t is clear that, inasmuch as plaintiff did not have employment in Florida, her choices, when favored work was offered by defendant, were to accept such work or have her disability benefits terminated. Any other resolution would be contrary to the purpose of the act, as interpreted by our Supreme Court and as enacted, in acquiescence to that interpretation, by the Legislature. [196 Mich App 91, 93-94; 492 NW2d 778 (1992). Citation omitted.]

Dissenting, Judge WAHLS held:

The WCAB found that plaintiff intended to reside in Florida permanently and that she had been seeking employment there. These findings are supported by competent evidence on the record and no fraud has been alleged. This Court may therefore not disturb those findings . . . .

\* \* \*

I would affirm the WCAB's conclusion that the plaintiff's refusal was for good and reasonable cause. [*Id.* at 95-96. Citation omitted.]

III

A

The Legislature partially codified the judicially created favored-work doctrine in the reasonable employment provisions of the worker's compensation act. MCL 418.301; MSA 17.237(301), and MCL

418.401; MSA 17.237(401).[7] However, these provisions are far more than a simple compilation of this Court's prior favored-work decisions. While building on some of those decisions, some of these provisions have significantly changed others. Although the Legislature has made significant changes in the favored-work doctrine, this Court need not ignore all of its prior favored-work decisions in their entirety.[8]

For example, it is a well-established rule of statutory construction that the Legislature is presumed to be aware of judicial interpretations of existing law when passing legislation. *Dean v Chrysler Corp,* 434 Mich 655, 667, n 18; 455 NW2d 699 (1990). Therefore, when the Legislature codifies a judicially defined requirement without defining it itself, a logical conclusion is that the Legislature intended to adopt the judiciary's interpretation of that requirement.

This conclusion is also supported by the associated rule of construction that provides that words and phrases that have acquired a unique meaning at common law are interpreted as having the same meaning when used in statutes dealing with the same subject. *Thornton v Allstate Ins Co,* 425 Mich 643, 648; 391 NW2d 320 (1986); MCL 8.3a; MSA 2.212(1). The statutory requirement of "good and reasonable cause" is analogous to the common-law requirement of "good faith or reasonableness." *Bower v Whitehall Leather Co,* 412 Mich 172, 178; 312 NW2d 640 (1981). The statutory requirement is too similar to the common-law requirement to be dismissed as coincidence.

Applying these basic rules of construction to the statute at hand, we think it obvious that the

---

[7] 1981 PA 200 and 1981 PA 199, respectively.

[8] Obviously, if there is a conflict between the common law and a statutory provision, the common law must yield.

Legislature did not, nor did it intend to, change the common law for this specific requirement. Accordingly, we turn to an examination of the common law.

B

This Court examined an offer of favored work and the reasonableness of its refusal in *Kolenko v United States Rubber Products, Inc,* 285 Mich 159; 280 NW 148 (1938). In that case, the plaintiff suffered a compensable injury to her arm. After paying compensation for a short period, the defendant stopped. The plaintiff sued, and at the subsequent hearing the defendant alleged that the plaintiff had refused an offer of substitute employment.

The offer was in the form of a request by the defendant that the plaintiff come to the plant where she would be given work. The plaintiff, accompanied by her attorneys, went to the plant to see what type of job the defendant intended to give her. The defendant, however, refused to provide any details of the job. The defendant also refused to allow the plaintiff's attorneys into the plant to determine whether she was capable of performing the unspecified job.

The defendant maintained that these events demonstrated the plaintiff's unreasonable refusal to cooperate with the defendant. Thus, the defendant argued, her benefits should be denied. This Court flatly rejected the defendant's argument that the plaintiff had acted unreasonably.

> The burden was on the defendant to show that it offered plaintiff work which she could perform. . . . Plaintiff was under no obligation to comply with the unreasonable and arbitrary de-

mand of defendant that she accept whatever work the company thought suitable for her. Plaintiff in her attitude and conduct with regard to the proposed job clearly appears to have been actuated by good faith. The law does not compel her to submit to the capricious dictates of an employer with regard to the kind of work she must accept in order to show cooperation. The only lack of cooperation that appears from the record in this case is on the part of defendant. [*Id.* at 162.]

The Court held that the actions of both the employer and the employee must be judged against standards of good faith and reasonableness. This type of analysis suggests that these questions are questions of fact and, as such, they are committed to the discretion of the factfinder. The *Kolenko* Court said as much when it held:

The findings of fact of the department were supported by evidence and according to the provisions of the statute are conclusive. These, together with the conduct of defendant regarding plaintiff's reemployment, require that the award of the department of labor and industry be affirmed, with costs to plaintiff. [*Id.* at 163.]

The Court reached this conclusion by examining the conduct of the parties. An examination of the conduct of the parties is, by its very nature, a factual examination.

The *Kolenko* decision was essentially reaffirmed by this Court in *Bower,* a case decided only weeks before the enactment of 1981 PA 200. In *Bower,* the plaintiff suffered a compensable work-related injury. Aggravations of the injury over a span of three-years resulted in the plaintiff quitting his job and moving to Florida. The plaintiff found suitable employment in Florida, but was notified by the defendant nine months after his arrival there, and

on the eve of trial, that favored work was now available at the defendant's plant in Michigan.

This Court held that the primary purpose of the favored-work doctrine is mitigation. The common-law doctrine of mitigation is founded on reasonableness, and application of a reasonableness standard requires the factfinder to examine the facts and circumstances of each case.[9] The reasonableness of the employee's actions as well as the employee's good faith, or lack thereof, are factors that must be considered in determining whether the employee's refusal of favored work will result in a forfeiture of benefits.

> In reaching our decision, we find that the good faith or reasonableness of a worker's actions must be taken into account in determining whether the forfeiture penalty should be imposed, and, further, that factors other than those relating to the physical capacity to perform favored work may be considered in assessing the reasonableness of the refusal. [*Bower* at 178-179.]

Refusal is justified if it is reasonable and furthers the policies underlying the act.

In applying this standard in *Bower*, this Court held:

> Denial [of benefits] would encourage an injured

[9] This Court is presently examining the issue of mitigation in *Marquis v Hartford Accident & Indemnity,* 444 Mich 638; 513 NW2d 799 (1994). In that opinion, Justice GRIFFIN, writing for the majority, observes that mitigation also plays a similar role in the no-fault automobile insurance act:

> This policy [of mitigation] promotes cost savings for consumers as well as insurers by encouraging those injured in an auto accident to rehabilitate themselves . . . . Reasonableness is the touchstone of this obligation and, ordinarily, reasonableness of mitigation is a question for the factfinder. [*Id.* at 655.]

worker to stagnate, awaiting the possibility that the original employer might offer a job sometime in the future. Certainly the employee would hesitate to seek or accept a job in another city, when he or she could be faced with the no-win choice of incurring the expense and emotional upheaval of returning or suffering a cutoff of benefits.

Denial would also discourage employers from hiring disabled workers. Few employers would be willing to take the risk of employing, and perhaps retraining, injured persons, only to have them forced to quit when called upon by the former employer. [*Id.* at 192-193.]

This Court noted that allowing Bower to collect benefits could encourage injured workers to move away, in an attempt to avoid having to accept favored work while continuing to receive benefits. However, the high cost of relocation, both financially and emotionally, makes this an unlikely danger. Furthermore, this Court realized that the "rare" employee who moves in a bad-faith effort to avoid having to accept favored work would be denied benefits.

This Court emphatically rejected a blanket rule denying benefits whenever an employee moves away from the locale of the employer. "[A]n employer should [not] be able to exert such control over an individual without an assessment of the unique factors in each case." *Id.* at 194.

*Bower,* like *Kolenko,* makes clear that the reasonableness of an employee's actions are questions of fact. Although not made explicit in *Bower,* this proposition permeates the entire discussion in that case.[10]

---

[10] Such a finding was explicitly made by the WCAB in *Bower,* an opinion this Court affirmed. Chairman Gillman, writing for a unanimous appeal board, stated:

[F]actors other than a claimant's physical ability to perform the work may be taken into account in assessing the reasonableness of the refusal, our function as a reviewing court is *extremely limited.* The findings of fact of the WCAB are *conclusive* in the absence of fraud and will not be disturbed if supported by competent evidence in the record. [*Id.* at 197. Emphasis added and citations omitted.]

C

Given the timing of *Bower,* decided November 23, 1981, some may question the effect it may have had on the reasonable employment provisions of the worker's compensation act that took effect January 1, 1982.[11] That question need not be answered here. *Bower* does not represent a change in the law; rather, it represents a consolidation of the favored-work doctrine. It solidified and made clear that a reasonableness analysis must be undertaken when examining an employee's refusal of favored work. This conclusion was not, and is not, revolutionary. This type of analysis has been a part of the favored-work doctrine since *Kolenko* was decided over fifty years ago.

The Legislature incorporated this Court's common-law requirement of reasonableness into the worker's compensation act when it mandated that a refusal of reasonable employment must be for good and reasonable cause. This requirement, as

[T]he dispositive questions are not ones of law but of fact: Was the offer reasonably made, or was it a ploy to avoid payment of benefits? Was plaintiff's refusal to accept the offer reasonable under the circumstances? [1977 WCABO 3920, 3921.]

[11] See *Li v Feldt (After Second Remand),* 439 Mich 457, 472; 487 NW2d 127 (1992) (opinion by Cavanagh, C.J.), stating that the date a law takes legal effect is the relevant date for interpretive purposes.

developed in *Kolenko* and *Bower,* calls for case-by-case analysis.

In determining whether a refusal of reasonable employment is for good and reasonable cause, the dispositive questions are questions of fact, not law. Findings of fact in worker's compensation proceedings, if supported by any competent evidence, are conclusive on the courts of this state in the absence of fraud or unless otherwise provided by law. Const 1963, art 6, § 28; *Holden v Ford Motor Co,* 439 Mich 257, 262; 484 NW2d 227 (1992); MCL 418.861a(14); MSA 17.237(861a)(14).

We do not attempt to define what "good and reasonable cause" is. What is reasonable in one situation may not be in another. Therefore no exhaustive definition could ever be formed to encompass the varied nuances of such a deceptively simple legal principle as "good and reasonable cause." The case at bar does, however, provide examples of some of the factors that may be considered in gauging the reasonableness of an employee's actions.

Those factors may include: (1) the timing of the offer, (2) if the employee has moved, the reasons for moving,[12] (3) the diligence of the employee in trying to return to work, (4) whether the employee has actually returned to work with some other employer and, (5) whether the effort, risk, sacrifice or expense is such that a reasonable person would not accept the offer.

We provide these factors merely as examples. Not every personal consideration will constitute good and reasonable cause entitling an employee to continued benefits after a refusal of an offer of reasonable employment. It is left to the sound

[12] An attempt to avoid accepting a bona fide offer of reasonable employment by moving would never constitute good and reasonable cause.

discretion of the factfinder to carefully examine the facts and circumstances of each case to determine what is good and reasonable cause in any given situation.

IV

The date of injury in this case is after the effective date of MCL 418.301(5)(a); MSA 17.237(301)(5)(a); therefore, that statute controls.

Whether this Court believes that plaintiff's refusal of the offer was for good and reasonable cause is immaterial. Our only concern is whether the WCAB applied the correct legal test and whether there is any competent evidence to support its factual findings.

Even though the WCAB failed to substantively develop its analysis, it did apply the correct legal test.

> The question before us is whether a good-faith bona fide offer of favored work was made by defendant and whether plaintiff reasonably refused to perform the offer of favored work if such offer was reasonable. *Bower v Whitehall Leather Co,* 412 Mich 172 (1981), *Powell v Casco Nelmor Corp,* 406 Mich 332; 279 NW2d 769 (1979), and *Kolenko v U S Rubber Products, Inc,* 285 Mich 159 (1938). In the case at hand, we find that plaintiff was not unreasonable in her refusal to return to Michigan from Florida to perform a bona fide offer of favored work. [Unpublished opinion of the WCAB at 5.]

Furthermore, a review of the record indicates that there is competent evidence to support the WCAB's factual findings. The evidence shows that plaintiff called defendant repeatedly over a one-year period inquiring into the availability of work

suited to her physical limitations. There was evidence that she tried to return to work as demonstrated by her failed attempt to perform the sweeping job. The WCAB found as a matter of fact that plaintiff was credible and that she moved to Florida in a good-faith effort to improve her health, be closer to her family, and to find suitable work. She signed a one-year lease and paid a security deposit, thus substantiating her claim that she intended to live there permanently. Significantly, the WCAB found, again as a matter of fact, that plaintiff did not move to avoid accepting the job offer.

V

We hold that "good and reasonable cause" is the statutory equivalent of the same requirement found in the judicially created favored-work doctrine. Whether an employee's refusal of an offer of reasonable employment is for good and reasonable cause is a question of fact. Our constitution gives considerable discretion to factfinders in worker's compensation proceedings. Neither this Court nor the Court of Appeals should usurp that discretion. Because the correct legal test was applied, we hold that the Court of Appeals should not have disturbed the factual findings of the WCAB.

We reverse the judgment of the Court of Appeals and reinstate the decision of the WCAB. We remand this case to the WCAC for proceedings consistent with this opinion.

LEVIN, BOYLE, and MALLETT, JJ., concurred with CAVANAGH, C.J.

RILEY, J. I respectfully dissent. While the majority's opinion has much to recommend it, I am

troubled over the fact that it does not take adequate account of what I believe to be an overriding policy of worker's compensation law, to wit: an employee's good-faith duty to accept reasonable offers of favored work.

As this Court has clearly recognized, the legislative amendments of the Worker's Disability Compensation Act in the last decade were intended to narrow eligibility qualifications.

> [W]e believe that our decision today is consistent with the intent of the Legislature manifested by its reform efforts during the past decade. A purpose of the comprehensive 1980 and 1981 revisions of the workers' compensation system was to overturn or modify expansive interpretations placed upon the act by this Court. Although the dollar amount of benefits payable to workers eligible for compensation was increased, there can be no doubt that the Legislature also intended through its 1980 and 1981 reform efforts to narrow and restrict the eligibility qualifications. [*Dean v Chrysler Corp,* 434 Mich 655, 666-667; 455 NW2d 699 (1990).]

In addition, the economic and political climate of the time cannot be divorced from consideration of the legislative intent behind the reforms of 1980 and 1981 of the WDCA. In my dissent in *Farrington v Total Petroleum, Inc,* 442 Mich 201, 226; 501 NW2d 76 (1993), I stated:

> The amendments at issue were but a component of a broad reformation of the WDCA, which was motivated by a crippled economic environment and a perceived need to reduce the burden and costs imposed upon free enterprise by the then-existing WDCA.[1]

---

[1] Indeed, the legislation's proponents explained that reducing the excessive costs of the then-current WDCA was essential to the economic survival of Michigan:

"Since 1979, and prior to that, 1978 during the elections,

everybody said that worker's compensation is the highest prior-
ity in the State of Michigan. We cannot afford to lose industry
and jobs in this state. We cannot afford to see people going to
other states . . . .

*   *   *

"I think it is a Number One priority; one that we have
neglected. One that we have pushed aside. One that we have
tried to pacify by saying that we are going to have this study
committee, or that study committee, but it is one that is very
necessary that we get at if we want to retain Michigan as a
state than [sic] can provide jobs and not as an industrial
wasteland. [1980 Journal of the Senate 820 (Senator Wel-
born).]"

Senator Guastello echoed his colleague's premonitions just
before introduction of the reform bill:

"[A]ll of us here today, both on the floor of the Senate and in
the galleries, are faced with a real moment of truth as far as
Michigan is concerned and I think that moment of truth is
simply—what are we going to do to insure a healthy economic
climate, not only for ourselves in this state, but for our chil-
dren. [1980 Journal of the Senate 822.]"

See also 1980 Journal of the Senate 1310 (Senator DeMasco).

---

In light of this historical backdrop, I believe it
appropriate to consider the favored-work doctrine
and its place amidst the aforementioned reform
efforts. In *Bower v Whitehall Leather Co,* 412
Mich 172; 312 NW2d 640 (1981), a majority of this
Court was called upon to discern the parameters of
the favored-work doctrine.[1] The majority con-
cluded:

> *The primary purpose of the doctrine is that of
> mitigation.* It allows an employer to reduce or
> completely eliminate compensation payments by
> providing work within the injured employee's
> physical capacity. At the same time, it encourages
> the employee to return to productive employment
> rather than to remain idle, thus also serving a
> rehabilitative function. [*Id.* at 182. Emphasis
> added, citation omitted.]

*Bower* involved an injured employee who had

---

[1] When the *Bower* opinion was issued, the favored-work doctrine
was a judicial, rather than a legislative creation. See *id.* at 182.

moved to Florida while he was still receiving worker's disability benefits. Of specific importance to the majority were the facts that the plaintiff had moved nine months before the offer of favored work, that both he and his wife had found employment in Florida, and that the wages plaintiff earned in Florida were credited to the employer against its compensation liability. While recognizing that an employee's refusal of a favored-work offer was subject to a standard of reasonableness, the majority qualified its holding in the following way:

> It should be recognized that we do not hold that just any personal consideration may excuse a refusal of favored work. Nor may an employee avoid returning to work tendered upon a good-faith offer by merely removing himself from the locality of the employer. Only under circumstances similar to those in the instant case, *where the claimant's actions further the policies of the statute,* can such a rejection be justified. [*Id.* at 196.]

Shortly thereafter, the Legislature codified the favored-work doctrine in 1981 PA 200. In light of the reform efforts prevalent at that time, I cannot but conclude that the act of codification, although validating certain aspects of the favored-work doctrine, was intended in part to prevent the types of expansive interpretation that were at the heart of the reform legislation.

Thus, we are faced with a conflict. It is clear from the deferential standard of review that reviewing courts should not cavalierly disregard the fact-finding expertise of the Worker's Compensation Appeal Commission (and formerly, the Worker's Compensation Appeal Board).[2] On the other

---

[2] See Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861);

hand, the policies behind the WDCA, which include the duty of an employee to accept reasonable offers of favored work, should not be discounted.

While I agree that the determination whether an employee's refusal of favored work is reasonable is essentially a factual question, the determination whether the WCAB or WCAC applied the correct criteria in analyzing whether the refusal was reasonable is *not* a question of fact, and hence this Court is not constrained by the limited review applicable to factual findings.[3] In the case at bar, the WCAB failed to apply the correct criteria in determining that plaintiff's refusal was reasonable. Consequently, this Court is not precluded from reviewing the WCAB's findings despite the fact that substantial, material, and competent evidence may exist to support the conclusion that plaintiff's refusal was reasonable.

The findings and analysis of the WCAB consisted of the following:

> Nonetheless, we find from the facts that plaintiff had relocated to Florida in June of 1986 and *intended* to stay in Florida on a permanent basis. Plaintiff was attempting to seek work in Florida, had signed a lease with the condominium association, and was reliant upon family members as she had sold all of her possessions prior to leaving Toledo, Ohio. We find that plaintiff was credible in

*Holden v Ford Motor Co,* 439 Mich 257; 484 NW2d 227 (1992); *Farrington, supra* at 218-219.

[3] See *Cox v Schreiber Corp,* 188 Mich App 252, 256; 469 NW2d 30 (1991) ("This Court may reverse the WCAB's decision if it operated within the wrong legal framework or its decision is based on erroneous legal reasoning"); *Carter v Lakey Foundry Corp,* 118 Mich App 325, 331-332; 324 NW2d 622 (1982) ("Error may be committed by basing a finding of fact on a misconception of law or by failing to correctly apply the law to a finding of fact. . . . Where, however, the board misconstrues the law . . . , an appellate court will be free to overturn the board's decision"). See also 100 CJS, Workmen's Compensation, § 764, pp 1255-1256.

her testimony and accept that *she planned to reside in Florida on a permanent basis.* The record discloses that there was nothing to her knowledge that would have her return to Michigan since at the time of her move she did not know that defendant was seeking favored work for her. [Emphasis added.]

It is evident from the above passage that the primary basis upon which the WCAB rested its conclusion that plaintiff's refusal was reasonable was its determination that plaintiff *intended* to remain in Florida permanently. Although plaintiff's intent in moving to Florida is *one* factor to consider in determining whether her refusal was reasonable, it should not be dispositive.[4]

The guiding principle in determining whether a refusal of employment is reasonable should be whether such a refusal advances the policies of the worker's compensation legislation. Failure to properly consider the policy favoring mitigation is therefore an error of law that is not insulated from appellate review.

Borrowing the policy concept directly from *Bower,* as implicitly adopted in 1981 PA 200, the Court of Appeals majority focused not merely on the basic facts, but also on the facts as they related to this policy of facilitating reemployment and not continued unemployment. Under the facts of this case, which differ significantly from those

---

[4] The danger of allowing an employee's intent to control the inquiry is clear. Any employee whose employer had failed to find favored work for such employee could decide to leave town, depriving his employer of the opportunity to mitigate. By merely informing his employer that his move was permanent, the employee could dictate the amount of time given to the employer to find suitable employment for the employee. Although an employee's control over this issue would appear to be circumscribed by the WCAC's conclusion that plaintiff was unaware of defendant's efforts to find her a favored position, this is an insufficient check upon employee manipulation to allow intent to be controlling.

in *Bower*, the majority concluded that plaintiff's actions failed to further the policies of the act and that her refusal of the bona fide work offer was therefore unreasonable. 196 Mich App 91, 94-95; 492 NW2d 778 (1992).

To reconcile the conflict between an employer's interest in an employee's reemployment and the employee's interest in rehabilitation, which are equally important concerns as provided in *Bower* and implicit in the statute as it is now written, the reasonableness of an employee's rejection of a bona fide offer of reemployment must take into account more than the employee's motivation for the move into a new locale. Rather, a factual balancing of interests is required under the totality of the circumstances. Examples of the appropriate questions include whether the employee has found alternative employment, how long the employee has been in the new locale, and the nature of any roots that an employee and family members establish in the new community. Without this inquiry, a factual assessment of reasonableness is incomplete because it would disregard the mitigation prong of the favored-work doctrine.

In the case before us, plaintiff did sell her home near the employer's plant, but her letter notifying the employer of her new address did not make clear that the move was to be permanent.[5] In addition, she initially accepted the offer of favored work over the telephone, but later rejected it after speaking with her attorney. Further, the record does not make clear that plaintiff had good prospects for employment in Florida. Accordingly, I am not convinced that plaintiff's rejection of favored work was reasonable in light of the circumstances, which do not take into account the employer's

[5] In fact, the letter provided that plaintiff was "staying with relatives until further notice."

interests and efforts to ensure reemployment through favored work.

Although I am not certain that plaintiff's rejection was unreasonable, the failure of the WCAB to review plaintiff's claim in light of the purposes of the act, as it relates to the important interest in reemployment rather than unemployment, prevents me from accepting its factual findings without further inquiry. Accordingly, I would hold that a ruling by the WCAB or the WCAC that does not assess the facts in light of the aforementioned policy is insufficient as a matter of law. While an assessment of the facts that respects the mandates of this policy may remain inviolate absent fraud, an assessment that fails to respect the mandates of *Bower* and the statute, i.e., the policy favoring employment over unemployment that is based on personal reasons unrelated to the favored-work offer, cannot alone support a finding of reasonableness. While the hardship of relocation may be weighed in the factual balance, it is by no means dispositive.

For all of the aforementioned reasons, I would affirm the decision of the Court of Appeals or remand for further consideration of the reasonableness of plaintiff's rejection.

BRICKLEY and GRIFFIN, JJ., concurred with RILEY, J.