PEOPLE v REEVES

Docket No. 98452. Argued October 5, 1994 (Calendar No. 11). Decided
    January 31, 1995.
    Juma Reeves, Auneray Barber, and Ronald Williams were
    charged in the Thirty-Sixth District Court, Thomas A. Van
    Tiem, J., with felony murder, the underlying felony being the
    burning of a dilapidated abandoned house. The Detroit Record-
    er's Court, Daphne Mean Curtis, J., reduced the felony murder
    charge to involuntary manslaughter, finding that the word
    "arson" in the felony murder statute does not include the
    burning of property other than a dwelling house. Following an
    interlocutory appeal, the Court of Appeals, TAYLOR, P.J., and
    HOOD and B. A. JASPER, JJ., in an opinion per curiam, con-
    strued the word "arson" in accordance with the common-law
    definition and found that it referred only to the burning of
    another's house or dwelling house and appurtenances (Docket
    No. 157795). The people appeal.
       In an opinion by Justice MALLETT, joined by Chief Justice
    BRICKLEY, and Justices LEVIN, CAVANAGH, BOYLE, and RILEY,
    the Supreme Court held:
       "Arson" in the felony murder statute refers to the common-
    law crime of arson, that is, the malicious and voluntary or
    wilful burning of a dwelling house of another.
       1. In interpreting penal statutes, courts cannot expand the
    scope of the statutory prohibition, and their construction must
    further the legislative intent and purpose. Where matters are
    not specifically addressed, courts will apply common-law rules.
    Where a statutory provision describes by name, but does not
    clearly and explicitly define a criminal offense, courts will
    construe the statutory crime by resorting to the common-law
    definition. The repeal of a statute revives the common-law rule
    as it was before the statute was enacted.
       2. There must be clarity and explicitness in the statutory
    definition of a crime and the classification of acts that may
    constitute it; however, in interpreting the statute, a court may

REFERENCES
Am Jur 2d, Arson and Related Offenses §§ 1, 3; Homicide §§ 46, 72.
See ALR Index under Arson; Felony Murder Doctrine.

not expand the scope of the proscribed conduct. The history of the felony murder statute reveals that the Legislature always considered conduct described as arson an aggravating circumstance. It was clearly the intent of the Legislature to prevent the endangering of human lives. The arson and burning statute in this case is virtually identical to the 1931 statute. Similarly, the felony murder statute at issue includes arson as a predicate offense without clearly and explicitly defining the criminal offense. Therefore, the legislative intent would be furthered by ascribing the same construction of the word "arson" in the 1931 felony murder statute to the word "arson" appearing in the current felony murder statute, that is, to the burning of the dwelling house of another.

3. A review of the history of the felony murder statute and the crime of arson reveals a legislative intent to retain the common-law definition of arson for purposes of construing the felony murder statute. At common law, to constitute arson, the house burned was required to be in a condition for dwelling. Under the circumstances of this case, the house was not in such a condition, and the owner had abandoned any intent to inhabit the house in the future. The defendants, therefore, could not be charged with arson. Because the defendants were charged with felony murder, with the predicate felony being the burning of other real property, the trial court properly determined that the felony murder charge was improperly lodged. Similarly, the Court of Appeals properly construed the word "arson" in accordance with its common-law definition.

Remanded.

Justice WEAVER took no part in the decision of this case.

202 Mich App 706; 510 NW2d 198 (1993) remanded.

*People v Clemons,* 184 Mich App 726; 459 NW2d 40 (1990) overruled.

HOMICIDE — FELONY MURDER — COMMON-LAW ARSON.

"Arson" as used in the felony-murder statute refers to the common-law crime of arson, that is, the malicious and voluntary or wilful burning of a dwelling house of another (MCL 750.316; MSA 28.548).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *Karen M. Woodside,* Assistant Prosecuting Attorney, for the people.

*Williams, Reeves & Barber* (by *Brian M. Legghio*), and *Monsey G. Wilson*, and *Tyler, Xuereb & Nelson, P.C.* (by *Joseph M. Xuereb*), for the defendants.

MALLETT, J. This is a statutory construction case involving the interpretation of the word "arson" in the first-degree (felony) murder statute, MCL 750.316; MSA 28.548. Defendant Juma Reeves, and codefendants, Ronald Williams and Auneray Barber, were charged, inter alia, with felony murder, with the underlying felony being the burning of other real property, MCL 750.73; MSA 28.268. Thirty-sixth District Court Judge Thomas A. Van Tiem, Sr., bound over all three defendants for trial on, inter alia, felony murder and burning other real property charges. Detroit Recorder's Court Judge Daphne Means Curtis reduced the felony murder charge to involuntary manslaughter, MCL 750.321; MSA 28.553, finding that the word "arson" in the felony murder statute does not include the burning of property other than a dwelling house. The trial was stayed to allow the prosecutor's interlocutory appeal to the Court of Appeals.

The Court of Appeals construed the word "arson" in accordance with the common-law definition, stating that "at common law, 'arson' referred only to the 'burning of another's house or dwelling house' and appurtenances." 202 Mich App 706, 708; 510 NW2d 198 (1993). We granted the prosecution's application for leave to appeal[1] to determine whether the word "arson" in the felony murder statute includes the burning of other real property. We conclude that the construction of the word "arson" in the felony murder statute refers to the common-law crime of arson, that is, the

[1] 445 Mich 862 (1994).

malicious and voluntary or wilful burning of a dwelling house of another.[2]

## FACTS

During the preliminary examination, the confessions of each of the defendants was read into the record. Each defendant admitted participation in setting the fire at 8340 Kenney, a dilapidated abandoned house in Detroit.

Defendants admitted that they retrieved a mattress from the backyard at 8340 Kenney, carried it inside, doused the mattress and other furnishings located in the house with charcoal lighter fluid, and threw a lighted match on the mattress. The Detroit Fire Department was summoned to extinguish the blaze. Despite the fire department's efforts, the resulting fire consumed the structure.

Before the fire, the old-fashioned brick coat siding had been removed from the foundation to the eaves, exposing the wooden frame.[3] The foundation was weakened by the removal of the bricks. The fire burned through the floor joists and wood structure of the house, eventually causing it to collapse on a fire fighter trainee, killing him.

Although the defendants initially fled from the scene, they returned moments later to watch the flames spread from 8340 Kenney to 8334 Kenney. Both the homes were completely consumed by the fire, but not before spreading to 8328 Kenney, an

---

[2]    According to Lord Coke, it [arson as defined at common law] was the malicious and voluntary [or wilful] burning of the house of another by night or by day . . . . The crime was regarded as being against the possession rather than against the property. [Note, *Arson—Statutory change of common law requisites,* 25 Mich L R 450 (1927).]

[3] There is no evidence that the defendants participated in the removal of the bricks.

occupied dwelling. The roof and second floor dormer of the occupied dwelling were charred.

The prosecution argues that the Legislature defined the crime of arson in 1927 PA 38. The 1927 enactment expanded the common-law definition of arson to include any unlawful burning. The Legislature amended the statutory language in 1929, but retained the use of the word "arson." 1929 CL 16935.

The prosecution avers that *People v Clemons,* 184 Mich App 726, 728; 459 NW2d 40 (1990), clarified the modern statutory definition of the crime of arson. The *Clemons* Court determined that "the Legislature intended that the word 'arson' apply to MCL 750.73; MSA 28.268, burning of real property," stating that "[t]his statute was derived from 1929 CL 16935 which was specifically designated as the crime of arson."

Defendants respond that the statutory history of the arson and burning statute does not indicate an expansion of arson beyond the burning of a habitable structure. Defendants contend that a careful review of the statutory history of the arson and burning statute compels the conclusion that the Legislature, when it enacted the Penal Code in 1931, did not intend all types of unlawful burning to constitute arson. Defendants argue that the Legislature was careful to delete the key language on which the prosecution relies. See 1931 PA 328.

The Court of Appeals declined to follow *Clemons,* stating that *People v Foster,* 103 Mich App 311; 302 NW2d 862 (1981), is indistinguishable from the present case and is better reasoned than *Clemons.* We agree.

I

The Court of Appeals has previously considered

the issue whether the word "arson" included the burning of other real property in *Foster* and *Clemons,* reaching inconsistent conclusions. Both the prosecution and the defendants in the present case attempt to resolve the conflict by arguments based on an analysis of the history of the arson and burning statute.

In *Foster,* the defendant and a codefendant were charged with felony murder and burning a dwelling house or its contents after setting fire to a vacant house. A rookie fire fighter was killed while inside the building. The defendant was convicted of manslaughter, MCL 750.321; MSA 28.553.

The Court of Appeals reversed the defendant's conviction in *Foster* at 315-316, noting that the structure was merely a shell of a house and was not a dwelling. The Court concluded that the structure must be habitable to qualify as a dwelling house under the burning dwelling house statute, MCL 750.72; MSA 28.267. Before the fire, the radiators, hot water heater, and toilet were removed. The windows were broken, and the door was kicked in. The utilities had been disconnected. Also, the building was infested with rats. Under these conditions, the house was not a dwelling house; therefore, there was no arson to serve as the predicate offense for felony murder. The Court of Appeals panel implicitly determined that the word "arson" in the felony murder statute referred to the burning of a dwelling house and not the burning of other real property.

In *Clemons,* the defendant was charged with three counts of felony murder and one count of burning real property. He pleaded guilty of three counts of second-degree murder, MCL 750.317; MSA 28.549, and one count of burning real property. The defendant claimed that his plea bargain was illusory because the burning of real property

cannot serve as the predicate offense for felony murder. Relying exclusively on 1929 CL 16935,[4] and without mentioning subsequent statutory revisions or the *Foster* decision, the Court of Appeals concluded that the meaning of "arson" within the felony murder statute included the burning of other real property.[5]

In the present case, the prosecution argues that in 1927, the Legislature broadened the common-law definition of arson to include the burning of other real property.[6] The defendants respond that when the Legislature enacted the Penal Code in 1931,[7] it did not intend to include in the definition of arson the burning of real property other than a dwelling house. The Penal Code of 1931, defendants argue, did not clearly expand or alter the common-law definition of arson.

---

[4] 1929 CL 16935 provides:

> 3. Any person who wilfully or maliciously burns any building or other real property other than those specified in section two [2] of this act [dwelling or building within curtilage], the property of himself or another, shall upon conviction thereof be imprisoned in the state prison for not more than ten [10] years.

1929 CL 16938 provides:

> 5-a. Any person violating the provisions of section[ ] three [3] . . . of this act shall be deemed to have committed the crime of arson and shall be punished in accordance with the respective provisions of said sections.

[5] *Clemons, supra* at 728.

[6] 1927 PA 38 provides:

> 2. Any person who wilfully or maliciously burns any dwelling house, either occupied or unoccupied, . . . shall be guilty of arson . . . .
>
> 3. Any person who wilfully or maliciously burns any building or other real property other than those specified in section two of this act, . . . shall be guilty of arson . . . .

[7] 1931 PA 328 eliminated 1929 CL 16938. The text of 1929 CL 16938 is set forth at n 4.

II

In interpreting penal statutes, courts cannot expand the scope of the statutory prohibition. *People v Jones,* 142 Mich App 819, 822-823; 317 NW2d 459 (1985). The courts' construction of the statutory language must further the legislative intent and purpose. *Marquis v Hartford Accident & Indemnity (After Remand),* 444 Mich 638, 644; 513 NW2d 799 (1994).

In enacting statutes, the Legislature recognizes that courts will apply common-law rules to resolve matters that are not specifically addressed in the statutory provision. 2B Singer, Sutherland Statutory Construction (5th ed), § 50.01, p 90. "[W]ords and phrases that have acquired a unique meaning at common law are interpreted as having the same meaning when used in statutes dealing with the same subject" matter as that with which they were associated at the common law. *Pulver v Dundee Cement Co,* 445 Mich 68, 75; 515 NW2d 728 (1994); *People v Young,* 418 Mich 1, 13; 340 NW2d 805 (1983). Where the statutory provision describes by name, but does not clearly and explicitly state the definition of a criminal offense, courts will construe the statutory crime by resorting to the common-law definition. *People v Couch,* 436 Mich 414, 419-420; 461 NW2d 683 (1990), and 2B Singer, *supra,* § 50.03, p 104. The repeal of a statute revives the common-law rule as it was before the statute was enacted. See *Marquis, supra* at 653, and *Garwols v Bankers Trust Co,* 251 Mich 420, 424; 232 NW 239 (1930).

Previously, we have interpreted other terms within the felony murder statute in *Young, supra,* and *People v McDonald,* 409 Mich 110; 292 NW2d 588 (1980). In those cases, we ascertained the statutory meaning of the terms burglary and rape

in the felony murder statute at the time of its enactment. We noted that until the Legislature expressly changed the meaning of those terms in the felony murder statute, its definitions of those terms in other statutory provisions were not controlling. *Young* at 16; *McDonald* at 116, 120-121. In those cases, we concluded that even though the Legislature had amended the breaking and entering statute and had enacted the criminal sexual conduct statute, it had not intended to change the common-law meaning of burglary and rape in the felony murder statute.

To ascertain the meaning of the word "arson" referred to in the felony murder statute, we must examine the history of the felony murder statute in relation to the arson and burning statute to determine what constitutes the crime of arson. After defining the crime of arson, we construe the language of the felony murder statute to further the goals and facilitate the intent of the Legislature. See *People v Stanaway,* 446 Mich 643, 658; 521 NW2d 557 (1994).

III

As early as 1827, the laws of Michigan reflected a distinction between the common-law definition of arson and the burning of other real property. The definitions were set forth in separate sections of the 1827 statute. The 1827 statute codified the common-law definition of arson. The relevant portions of that act provide:

> That if any person willingly and maliciously, shall burn or cause to be burned, or aid, counsel, procure, or consent to the burning of the dwelling house of another, or . . . belonging or adjoining thereto, or any other building, by means whereof a dwelling house shall be burnt, then and in every

such case, the person so offending, shall . . . be
punished . . . . [1827 Terr Laws, Crimes, § 21, p
546.]

The 1827 statute also contained prohibitions of
other types of burnings. Specifically, § 22 prohib-
ited burning public buildings, mills and out
houses. Section 23 prohibited setting fire to public
buildings, mills, and out houses. However, these
other burnings were not defined as arson.

The Revised Statutes of 1838 eliminated the
word "arson" from the statutory language, provid-
ing in relevant part:

Every person who shall wilfully and maliciously
burn, in the night time, the dwelling-house of
another, or shall, in the night time, wilfully and
maliciously set fire to any other building, owned
by himself or another, by burning whereof, such
dwelling-house shall be burnt in the night time,
shall be punished . . . ; but if the defendant shall
prove . . . , that at the time of committing the
offence, there was no person lawfully in the dwell-
ing-house so burnt, the punishment, instead of
imprisonment for life, may be imprisonment in the
state prison for any term of years. [1838 RS, pt 4,
tit 1, ch 4, § 1.]

The laws proscribing the burning of a dwelling
house,[8] burning of other real property,[9] and burn-
ing of personal property[10] remained relatively un-
changed until 1927.[11]

The Revised Statutes of 1838 contain eight stat-
utory provisions pertaining to unauthorized burn-

[8] 1871 CL 7552-7553.

[9] 1871 CL 7554-7557.

[10] 1871 CL 7558.

[11] Like the 1838 statute, the word "arson" was omitted from the
1857 statutory provisions governing the unlawful burning of a dwell-
ing house, 1857 CL 5745-5746; other real property, 1857 CL 5747-5750;
or personal property, 1857 CL 5751-5753.

ings (§§ 1-8). Section 2 required life (or a term of years) imprisonment for burning a dwelling house during the day time. Sections 3-6 and 8 proscribed the burning of other real and personal property.

The 1827 statute contained a felony murder provision that included arson, but did not include the burning of other real property as one of the predicate felonies.[12] In 1871, the Legislature clarified its intention that the word "any" in the felony murder statute modified the word "arson." Specifically, 1871 CL 7510 provides:

> All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate, *any arson,* rape, robbery, or burglary, shall be deemed murder of the first degree . . . . [Emphasis added.]

In 1927, the word "arson" appeared, for the first time since 1827, in the statute that proscribed the burning of property. The preamble to the statute stated:

> AN ACT to define and punish the crime of arson, and to repeal sections one, two, three, four, five, six, seven, eight and nine of chapter [154] of the revised statutes of [1846], being [§§ 15281 to 15286] of the compiled laws of [1915]. [1927 PA 38.]

In the 1927 statute, arson was essentially defined to include any unlawful burning of a dwelling house, other real property and personal property.[13]

In 1929, the Legislature revised the arson statute to eliminate the word "arson" as a specifically defined provision. The 1929 statute retained the

[12] *Id.,* § 58, p 556.
[13] See 1927 PA 38, §§ 1-4.

definition of arson of a dwelling house as set forth in the 1927 statute, identifying the 1929 provision in its catchline as "[w]ilful or malicious burning of property; dwelling or building within curtilage; penalty." The relevant portions of 1927 PA 38, § 2, provide:

> Any person who wilfully or maliciously burns any dwelling house, either occupied or unoccupied, whether owned by himself or another, or any building within the curtilage of such dwelling house, shall be guilty of arson and upon conviction thereof shall be imprisoned in the state prison for not more than twenty years.

Cf. 1929 CL 16934, which provides:

> Any person who wilfully or maliciously burns any dwelling house, either occupied or unoccupied, whether owned by himself or another, or any building within the curtilage of such dwelling house, shall upon conviction thereof be imprisoned in the state prison for not more than twenty [20] years.

The 1931 statute completely eliminated the word "arson" from the proscription against burning a dwelling house, other real property, and personal property. See 1931 PA 328, §§ 72-74. The 1931 statute expressly repealed sections 16933-16940 of the 1929 statute. See 1931 PA 328, § 567. 1929 CL 16938 provides:

> 5-a. Any person violating the provisions of section[ ] two [2] . . . of this act shall be deemed to have committed the crime of arson . . . . [The relevant provisions of the 1929 statute were repealed in 1931.]

Although the definition of and reference to arson

is conspicuously absent from the text of the 1931
statute, the title clause of chapter x of the 1931
act reads "ARSON AND BURNING."

The arson and burning statute has remained
relatively unchanged since the 1931 enactment.
The statute in the present case is virtually identi-
cal to the 1931 arson and burning statute. Specifi-
cally, the statutes at issue provide:

> Any person who wilfully or maliciously burns
> any dwelling house, either occupied or unoccupied,
> or the contents thereof, whether owned by himself
> or another, or any building within the curtilage of
> such dwelling house, or the contents thereof, shall
> be guilty of a felony, punishable by imprisonment
> in the state prison not more than 20 years. [MCL
> 750.72; MSA 28.267.]

> Murder which is perpetrated by means of poi-
> son, lying in wait, or other wilful, deliberate, and
> premeditated killing, or which is committed in the
> perpetration, or attempt to perpetrate arson, . . .
> is murder of the first degree . . . . [MCL 750.316;
> MSA 28.548.]

IV

In interpreting penal statutes, this Court "re-
quire[s] clarity and explicitness in the defining of
the crime and the classification of acts which may
constitute it"; however, we will not usurp the
Legislature's role by expanding the scope of the
proscribed conduct. *People v Reese,* 363 Mich 329,
335; 109 NW2d 868 (1961).

The history of the felony murder statute reveals
that the Legislature always considered as an ag-
gravating circumstance conduct described as ar-
son. In 1827, the Legislature expressly included
the crime of arson as one of the predicate felonies
for felony murder. All the predicate felonies listed
in that and subsequent felony murder statutes

were crimes against persons. It was clearly the intent of the Legislature to prevent the endangering of human lives. Thus, a construction of the present statute that would include a meaning of arson encompassing a crime against property would be inconsistent with the history of the felony murder offense and the legislative intent.

The most recent statutory definition of arson was presented in the 1927 statute. In that statute, the common-law definition of arson was enlarged to include other real property and personal property. This was the trend of the day. See note, *Arson—Statutory change of common law requisites,* 25 Mich L R 450-453 (1927). The Legislature eliminated the 1927 definition of arson in its 1929 enactment. The 1929 statutory references to the crime of arson were expressly repealed by the 1931 statute.

In 1931, the Legislature decided not to define the word "arson" and removed it from the provisions governing the burning proscriptions. In the absence of a clear and explicit definition of the criminal offense, we construe the statutory crime by resorting to the common-law definition of the criminal offense. See *Pulver, Couch,* and *Garwols, supra.*

In 1931, the common-law offense of arson differed from the burning offenses described in the 1931 statutory provisions. In the former, the proscribed conduct included the burning of a dwelling house of another. However, the statutory provisions included the burning of any building, other real property, or personal property, whether owned by the actor or someone else. Since the Legislature is presumed to know that the courts will apply the common-law meaning to words in the statute having a common-law definition and crimes not clearly or explicitly defined, this Court

infers from the circumstances that the Legislature intended to include only the common-law definition of arson in the 1931 felony murder statute. See *Reese, supra* at 334.

The arson and burning statute in the present case is virtually identical to the 1931 arson and burning statute.[14] Similarly, the felony murder statute in the present case includes arson as a predicate offense without clearly and explicitly defining the criminal offense. Therefore, we conclude that the legislative intent would be furthered by ascribing the same construction of the word "arson" referred to in the 1931 felony murder statute to the word "arson" appearing in the current felony murder statute, that is, the burning of the dwelling house of another.[15]

---

[14] The amendments made in 1945 PA 260, bringing the language into its current form, do not affect the current dispute.

[15]

| Statute | Definition | Repealed by |
|---|---|---|
| Arson defined 1827 Terr Laws, Crimes, § 21, p 542 | Burning of a dwelling house of another | inter alia 1927 PA 38 |
| Unlawful burnings 1838 RS, pt 4, tit 1, chap 4, §§ 1-8 | Burning of a dwelling house, real property, or personal property | 1857 CL 5745-5753 |
| Unlawful burning 1857 CL 5745-5753 | Burning of a dwelling house, real property, or personal property | inter alia 1927 PA 38 |
| Arson 1927 PA 38, §§ 2-4 | Burning of a dwelling house, other real property, or personal property | 1929 CL 16940 |
| Arson 1929 CL 16933-16940 | Burning of a dwelling house, other real property or personal property | 1931 PA 328, § 567 |
| Arson and Burning 1931 PA 328, §§ 72-74 | Burning of a dwelling house, other real property or personal property | Has been amended but not repealed; currently reflected at MCL 750.71 through MCL 750.75; MSA 28.266 through MSA 28.270. |

V

In the present case, the defendants set fire to a dilapidated abandoned house. Our task is to determine whether the house was a dwelling house so that the burning of it would constitute the crime of arson. In our pursuit, we find guidance in cases from this and foreign jurisdictions.

This Court first considered "whether the building that was set on fire was a dwelling house within the meaning of the statute" in *People v Losinger,* 331 Mich 490, 494; 50 NW2d 137 (1951). In *Losinger,* the defendant pleaded guilty of burning the dwelling house of another. On appeal, the defendant claimed that the cabin burned did not constitute a dwelling house. The owner of the cabin testified that the cabin was sufficiently sound and equipped for immediate occupancy. More particularly, the cabin owner testified:

> [The cabin] had an air-tight wooden floor built over a cement foundation. . . . [I]t contained 3 beds . . . with bedding, curtains on the windows and between the beds. It contained some furniture, a kerosene cooking stove, cooking utensils, groceries and canned milk in the cupboards, some personal possessions, clothing, a heating stove and fuel and all equipment necessary so that occupants could move in and immediately have the facilities of a furnished dwelling house. [*Id.* at 501.]

The owner had regularly dwelt in and occupied the cabin, but not on a daily basis. The *Losinger* Court, noting that "the crime of burning a dwelling house was an offense against a habitation and not against fee title," held that the building

burned was a dwelling house. *Id.* at 501-502. The Court accepted the following as the definition of dwelling house:

"The term 'dwelling house' has a broader meaning than a house that is actually occupied as such. It means any house intended to be occupied as a residence, and would include any such residence, even though not occupied by the complaining witness at the time of the burning." [*Id.* at 502.]

The arson and burning statute considered by the *Losinger* Court was virtually identical to the statute at issue in the present case.

The definition of a dwelling house set forth in *Losinger* is consistent with the intent of the Legislature. In 1931, the Legislature deleted the definition of the crime of arson and removed references to the crime from the arson and burning statutory provisions.[16] However, the crime of arson continued to be a predicate offense for the crime of felony murder. Like *Fillman v State,* 251 A2d 557 (Del, 1969), this Court infers from the circumstances that the Legislature intended to include only the common-law definitions of the crime of arson and the term of art "dwelling house." See *Couch, supra.* Therefore, this Court reaffirms the *Losinger* Court's definition of a dwelling house.

In *Fillman, supra* at 558, the Delaware Supreme Court was also called upon to determine whether the structure burned was a dwelling house. The court concluded that, at common law, the structure burned would not constitute a dwelling house. The court stated:

At common law . . . [w]here a building, al-

---

[16] See 1931 PA 328, §§ 72-74 and 567.

> though formerly used as a dwelling, has been
> abandoned for such purpose, has been unoccupied
> for a prolonged period of time, and has become
> unfit for habitation, it is deemed to have lost its
> character as a dwelling house and is not subject as
> such to common law arson. [*Id.* Citation omitted.]

The court concluded that the common-law defini-
tion of dwelling house applied because its statute
did not define the "word of art." *Id.*

In *People v Reed,* 13 Mich App 75; 163 NW2d
704 (1968), the Court of Appeals was called upon
to determine whether a structure that was burned
was a dwelling place. In that case, the defendants
set fire to a dilapidated structure located in a
residential neighborhood in Flint. *Id.* at 77. The
structure was previously used as a dwelling house,
but had been unoccupied for one and one-half
years before the fire. Although the house had
running water in the kitchen, it lacked bathroom
or washing facilities. Also, the interior was in
great need of repair. The fire department consid-
ered the building uninhabitable. However, the
building was not condemned because it was possi-
ble to restore it to a habitable condition. The
owner of the building testified that he intended to
make the necessary repairs so that his daughter
could move in. *Id.*

In *Reed,* the Court stated that the crime of
arson is an offense against habitation. *Id.* at 78.
"[T]he crime of arson [is] founded on the burning
of a structure that could reasonably be presumed
to be a place of human habitation." *Id.* at 79. The
Court concluded that "if it is unoccupied it would
have to be a structure that could reasonably be
presumed to be a place capable of being dwelt in
or lived in to qualify as a dwelling house within
the meaning of the statute." The Court concluded
that the structure was not capable of being dwelt

in at the time of the fire. Therefore, the crime of arson had not occurred.

Like *Reed,* the house at issue in the present case was in an extreme state of disrepair. There was no running water or other utilities in service at the house. The basement was filled with old tires and other combustibles. The outer bricks were removed from the foundation to the eaves, exposing the wooden frame. There was evidence that the house had been stripped. The house had been vacant for some time before the fire, and there was no evidence that the home would be restored to a habitable condition in the near future.

In *State v Williams,* 154 Vt 76, 77; 574 A2d 1264 (1990), the defendant was charged with arson for burning an unoccupied house. The defendant argued that he was not guilty of arson because the house was not a dwelling and was "incapable of being so used because of lack of heat, electricity or running water . . . ." The Vermont Supreme Court disagreed, holding that the structure was a dwelling because the owner had decided to renovate the building, had actually started renovation procedures, desired to keep the building, and visited the house every day during its vacancy. Concluding that the house was merely unoccupied and not abandoned, the court affirmed the arson conviction.

These cases establish the distinction between unoccupied and abandoned. If a dwelling is simply unoccupied at the time it is burned, common-law arson has been committed. If a dwelling house is unoccupied and dilapidated to the extent that it is deemed abandoned, then the structure is no longer considered a dwelling house and common-law arson has not been perpetrated.

At common law a house was required to be in a condition that could be dwelt in. Under the cir-

cumstances of this case, we conclude that the house was not in such a condition and that the owner had abandoned any intent to inhabit the house in the future.

As so aptly stated by the panel in *Foster, supra* at 316, n 2:

> While some poor wayfarer on the urban landscape might have decided that the building in dispute provided shelter and was therefore habitable, this fact cannot be seized upon to justify a conclusion that the building was indeed a "dwelling house." Were we to accept this reasoning in finding the structure a "dwelling house," our expansive construction would eliminate the special character of the arson statute. For those in our society who live a marginal existence on the streets, any abandoned building might be viewed as a habitable shelter.

We are neither willing nor empowered to expand the scope of the crime of arson or the definition of dwelling house beyond the legislative intent. The Legislature intended that the crime of arson and the definition of dwelling house be defined as at common law. The *Clemons* Court improperly expanded the scope of the crime of arson. Therefore, we overrule the decision in that case.

The *Foster* decision is consistent with the history of the arson and burning statute and reflects the legislative intent. The Court of Appeals panel in the present case was free to follow *Foster* because *Clemons* was decided before November 1, 1990, the effective date of Administrative Order No. 1990-6, 436 Mich lxxxiv-lxxxvii.[17]

We hold that the house burned in the present

---

[17] Administrative Order No. 1990-6 was effective at the time the Court of Appeals rendered its decision in the present case as provided in Administrative Order No. 1993-4, 442 Mich cxiii.

case was not a dwelling house. Therefore, the defendants could not be charged with arson.

## VI

In the present case, the defendants were charged with, inter alia, felony murder with the underlying felony being the burning of other real property. The felony murder statute at issue includes the crime of arson as a predicate offense.

A review of the history of the felony murder statute and the crime of arson reveals the legislative intent to retain the common-law definition of arson for purposes of construing the felony murder statute. The common-law definition of arson referred only to the burning of another's dwelling house and appurtenances. At common law, the structure burned must be a habitable dwelling. The house at issue in the present case was not a dwelling house. Because the prosecution charged the defendants with felony murder with the predicate felony being the burning of other real property, the trial court properly determined that the felony murder charge was improperly lodged. Similarly, the Court of Appeals properly construed the word "arson" in accordance with its common-law definition.

We remand this case for trial on the remaining counts.

BRICKLEY, C.J., and LEVIN, CAVANAGH, BOYLE, and RILEY, JJ., concurred with MALLETT, J.

WEAVER, J., took no part in the decision of this case.